**In re Stephen MARIN, Collette Ford Marin, Debtors.**

**No. 99–20911 CEM.**

United States Bankruptcy Court, D. Colorado.

Dec. 15, 2000.

Lance Eldon Isaac, Denver, CO, for R.J. Schubert.

Jane E. Frey, Denver, CO, for United States Trustee.

## ORDER AND JUDGMENT ON MOTION TO EXAMINE FEES

CHARLES E. MATHESON, Bankruptcy Judge.

This matter comes before the Court on the motion of the United States Trustee to examine the fees paid to R.J. Schubert, Esq. ("Schubert") for his services as counsel to the Debtors in this failed, and dismissed, Chapter 13 case. The matter is presented pursuant to section 329 of the Code. In response to the Trustee's motion, this Court set a status and scheduling conference at which time the Court entered its order requiring Schubert to file an appropriate fee disclosure and fee application, together with other disclosures, and set the matter for an evidentiary hearing. At the conclusion of that hearing, the Court stated its findings and conclusion on the record, with the explanation that a written order would enter. This order incorporates herein by reference the comments and findings by the Court that were made on the record.

At the hearing the Court heard the testimony of the Debtors, of Ms. Zeman, the Standing Chapter 13 Trustee, and of Schubert. Other than Ms. Zeman, the testimony had varying levels of credibility. As remarked by the Court at the hearing, the relationship of the Debtors to the truth is purely tangential. The testimony of Schubert, an officer of this Court, while of greater veracity than that of the Debtors, was itself subject to question in certain respects. This conflicting testimony presented an overall picture of difficult clients, assertions of incompetent profes-

sional advice, and suggestions of possible forgery. Fortunately, it has not proven necessary for the Court to resolve the shifting and conflicting evidence on these issues. The facts that are material to the resolution of the dispute before the Court are either not in conflict or can be resolved in Schubert's favor, and are rather simple.

The Debtors contacted Schubert in August 1999, seeking assistance with their financial affairs. The decision was made to file a Chapter 13. Schubert asserts that, at that time, he had the Debtors sign a fee agreement together with a supplemental letter. Both documents are important and deserve some comment.

The fee agreement provides that Schubert is to represent the Debtors in the Chapter 13 for a fee of $1,400, plus expenses. Of that, $240 was paid in advance, and the balance was to be paid out of the plan payments. The fee was for services up to confirmation only. Services after confirmation were to be provided at an hourly rate of $125. In the event of the dismissal of the Chapter 13 case "the actual earned attorney fees, plus all Expenses, shall be due and payable."

The supplemental letter was on Schubert's letterhead and was addressed to Ms. Zeman. It stated, in full:

> The above referenced Chapter 13 case has not been confirmed by the Court. The Debtors(s) have made payments toward their Plan obligation.
>
> If this Chapter 13 is dismissed, you are authorized by the Debtor(s) to send to this office, payable to the undersigned attorney, all funds attributable to Debtor's attorney's fees, now or hereafter in your possession regarding this case.

The letter was signed by Schubert. It was also signed by the Debtors under a line which provided: "By signing this letter, I/we consent to the arrangements as set forth above." [1]

The relationship between Schubert and the Debtors did not flourish. In December 1999, he withdrew as counsel for the Debtors in the Chapter 13. Shortly thereafter, they moved to dismiss the case and an order of dismissal was granted.

The case having been dismissed, Ms. Zeman's office prepared and submitted a final administrative report. That report disclosed that the Debtors had paid into the chapter 13 plan the total of $4,200. Having received that information, Schubert contacted the bookkeeper at Zeman's office and advised that he was authorized to receive the $4,200, and he transmitted to her a copy of the letter, purportedly signed by the Debtors, authorizing the Chapter 13 Trustee to pay to Schubert the funds on hand. A check for $4,200 was prepared by the Trustee, made payable to the Debtors, and that check was sent to Schubert. He thereupon endorsed the check for deposit to his COLTAF account, and deposited the check.[2] The next day he withdrew the funds from that account and deposited them in his general business account. He, at that point, sent the Debtors a final bill indicating that he had total time and charges due for his services in the amount of $4,471.01, less the advance retainer of $240, leaving a balance due of $4,231, against which he credited the sum of $4,200 as a "Transfer from trust."

Given the history of the relationship, it is not surprising that the Debtors looked with disfavor on Schubert's sequestration of the $4,200. They complained to, among others, Ms. Zeman. She then undertook a review of the matter and discovered that Schubert had filed with the Court his sec-

---

1. The Debtors deny signing the letter, and it is clear from the evidence that Mrs. Marin, in fact, did not sign the letter. Schubert asserts that the letter was signed by Mr. Marin for both debtors, and that Mrs. Marin confirmed that she had authorized the letter to be signed. For purposes of this order the Court assumes that the letter, and the fee agreement, were signed by the Debtors.

2. The endorsement was by Schubert, by his office stamp, "for deposit" to his trust account. The Debtors' signatures, real or otherwise, were not on the check.

tion 329 disclosure statement in which he stated that, for his services in the case, he had agreed to accept $2,000 (of which $240 had been paid); that such compensation was for pre-confirmation services only; and that, by agreement with the clients, the disclosed fee did not include any services for contested matters or post-confirmation services. No fee application had ever been filed. Accordingly, there were no orders entered by the Court under section 330 of the Code allowing fees in this estate.

Ms. Zeman's investigation also disclosed the fact that the $4,200 check, disbursed out of the estate and made payable to the Debtors, had been endorsed by Schubert and deposited in his clients' trust (COL-TAF) account. She contacted Schubert who confirmed that the funds had been so deposited, and that he had withdrawn the funds from the trust account for deposit in his general business account. The U.S. Trustee then commenced the instant proceeding to examine the fees paid to Schubert and to determine whether he should be permitted to retain the $4,200.

At the hearing Schubert took the position that what he had done was consistent with the general practice of Chapter 13 practitioners in this Court, and with the practice of Ms. Zeman's office. He stated that it was the common practice of attorneys to obtain, in advance, letters such as the one purportedly signed by the Debtors authorizing the payment of funds, in failed chapter 13 cases, to debtor's counsel. He also stated that it was a practice tacitly approved in Ms. Zeman office, and that checks were routinely disbursed in this manner. Ms. Zeman confirmed that she had learned that her bookkeeper did, in fact and from time to time, send checks (made payable to the debtor) to debtor's counsel, a practice that was unknown to, and not condoned by, Ms. Zeman.

Schubert's actions in this case exhibit either a gross indifference to, or an ignorance of, the legal requirements. Neither is an acceptable excuse for what has occurred.

The Court's authority to act in this matter has been invoked under section 329 of the Code. That section provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment ...

The legislative history of this section makes clear the reason for the provision:

Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny. H.R.Rep. No. 595, 95th Cong., 1st Sess. 329 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6285.

The provisions of section 329 are implemented by Bankruptcy Rule 2016(b). That Rule states:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief ... the statement required by section 329 of the Code .... A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Schubert failed to comply with these provisions. While he did file a section 329 disclosure, it only disclosed the fees Schubert might charge for pre-confirmation services. And, it was not even accurate at that. The disclosure talks about a fee of $2,000, but the fee agreement speaks of a fixed fee of $1,400. There is no disclosure of any agreement for billing at an hourly rate.[3] And, there was never any amendment filed to disclose that the clients were to be billed in excess of $4,000 for services in the case.

■ Section 329 is, by its express terms, applicable to payments made to counsel both before and after the bankruptcy case is filed. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472 (6th Cir.1996). Schubert was clearly obligated to file a disclosure with this Court (1) of the terms of his fee agreement, and (2) of his receipt of the $4,300 in payment of claimed fees. The obligations under section 329 and Rule 2016 are not vitiated by the dismissal of the case. To do so would undermine the role allocated to this Court by Congress under section 329 to protect debtors from the kind of heavy handed overreaching that occurred here. But, there is more.

During the pendency of a chapter 13 case, and before confirmation, the debtor is required to make payments to the trustee. 11 U.S.C. § 1326(a)(1). Section 1326(a)(2) of the Code is specific in providing what happens to those payments if a chapter 13 plan is not confirmed. In those circumstances, "the trustee shall return any such payment to the debtor, *after deducting any unpaid claim allowed under section 503(b) of this title."* (Emphasis added.) Section 503(b) is the Code provision that deals with the allowance of administrative expense claims in a bankruptcy case, including claims for the payment of professional fees under section 330.

■ Sections 329 and 1326(a)(2) implement a well coordinated scenario to allow the court to oversee the charges made by professionals, particularly in consumer bankruptcy cases. Under 329, and the related Rule 2016(b), an attorney must disclose all fees paid, or agreed to be paid, for services performed for a debtor. If the attorney wants to be paid out of the estate, then an application must be filed under section 330 of the Code, and the fees allowed. Those allowed fees are then an administrative expense of the estate per section 503(b) and, in a chapter 13 case, are paid out of the funds held by the trustee before any funds are paid out to creditors or returned to the debtors. *There is no other way for an attorney to be paid!* An attorney who extracts payments from debtors other than pursuant to proper disclosure, or to allowance under section 330, stands in violation of the provisions of the bankruptcy Code, and may properly be stripped of all fees. *Quiat v. Berger (In re Vann)*, 986 F.2d 1431, 1993 WL 53556 (10th Cir.1993) (unpublished opinion), *aff'g*, 136 B.R. 863 (D.Colo.1992); *Neben & Starrett v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877 (9th Cir.1995).

■ Here, Schubert failed on all accounts. His 329 disclosures were inadequate in the first instance, and were never amended. And, he failed to have his fees allowed under section 330 of the Code. He then compounded the error by attempting to shortcut the provisions of section 1326 by inducing the Chapter 13 Trustee's office to send him the check, representing the payments made by the Debtors during the pendency of the case, so that he could extract his fees out of those payments. Worse, he proceeded to endorse and deposit the trustee's check, made out to the Debtors, when he had absolutely no authority to do so.[4]

---

**3.** There is no specific requirement that an attorney must attach to the 329 disclosure a copy of any written fee agreement. However, cautious counsel should consider doing so.

In any event, the salient details of any such agreement must be disclosed.

**4.** Even assuming that the letter, purportedly signed by the Debtors, gave the trustee the

The Court has no doubt that Schubert was correct when he testified that the Debtors were difficult clients. Indeed, this Court has already commented on the lack of veracity evidenced by the Debtors and a good portion of their financial problems related to litigation pending against them where they were accused of embezzling hundreds of thousands of dollars. But the fact that the Debtors may not be nice people does not excuse Schubert from having to comply with the law as regards his fees.

Neither does it gain Schubert any compassion or relief by his argument that what he did is something commonly done by professionals in this jurisdiction and tacitly condoned by the chapter 13 trustee. This Court does not know that to be the case. But one thing is certain. If Schubert is correct, and if his performance is the standard of the Bar, then let the attorneys beware! Such illicit conduct will not be tolerated by this Court.

Having considered the evidence and the applicable law, and having found that Schubert has violated the applicable provisions of the Code and the Rules as cited herein, it is

ORDERED, that the payment to Schubert of the retainer of $240 is a fair and reasonable charge to the clients for the services that were rendered, and may be retained by Schubert; and it is

FURTHER ORDERED, that the retention by Schubert of the $4,200 out of the funds distributed by the Standing Chapter 13 Trustee, is wrongful and is disallowed; and it is

FURTHER ORDERED that Schubert shall disgorge said sum and pay it over to the Chapter 13 Trustee within 10 days from the date of entry of this order.

authority to send the payment to the attorney, there is absolutely nothing in any of the documents giving Schubert the authority to endorse and deposit the check, into his trust account or otherwise.