**In re 5900 ASSOCIATES, L.L.C., Debtor.**

**Fred J. Dery, Trustee, Plaintiff,**

v.

**Cumberland Casualty & Surety Company, Defendant.**

**Bankruptcy No. 03–57842–R.**
**Adversary No. 03–5334–R.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Nov. 24, 2004.

5900 Associates, LLC, Clarkston, MI, Pro se.

Daniel J. Weiner, Ryan D. Heilman, Schafer and Weiner, PLLC, Bloomfield Hills, MI, for Defendant.

Stephen E. Spence, Detroit, MI, for Marion J. Mack, U.S. Trustee.

Samuel D. Sweet, Ortonville, MI, for Fred Dery, Trustee.

### Opinion Granting Defendant's Motion for Judgment

STEVEN W. RHODES, Chief Judge.

This is an adversary proceeding filed by the trustee to recover a fraudulent transfer under M.C.L. § 566.35. At the conclusion of the trustee's case at trial, the defendant moved for judgment under Fed. R.Civ.P. 52(c) and Fed. R. Bankr.P. 7052. Specifically, the defendant argues that the trustee failed to prove that the debtor was insolvent at the time or as a result of the alleged fraudulent transfer, as required by M.C.L. § 566.35.

### I.

The challenged transfer is a mortgage granted to the defendant by the debtor on May 5, 1998, as security for an indemnity agreement. The evidence establishes that at that time, the value of the debtor's assets was $800,000. The evidence further establishes that at that time, the debtor had three creditors. The claims of two of these creditors are not in dispute for purposes of determining the debtor's insolvency in this adversary proceeding. The debtor owed $100,000 to the Environmental Protection Agency and $575,000 to the defendant.

The claim of the third creditor, Todd Halbert, is in dispute. The trustee contends that the debtor's obligation to Halbert was $166,119.81 pursuant to a promissory note, and that therefore the total of the debtor's liabilities ($841,119.81) exceed-

ed the value of its assets ($800,000). The defendant contends that the debtor's obligation to Halbert was less than $125,000, and that therefore the total of the debtor's liabilities was less than the value of its assets. The defendant so contends because a substantial part of Halbert's claim is for fees for legal services that he provided to the debtor in connection with the debtor's prior chapter 11 bankruptcy, for which he did not obtain court approval as required.

## II.

The first issue is the extent to which Halbert's claim relates to his services on the debtor's prior bankruptcy case. This case was filed on April 17, 1997, and dismissed on June 25, 1997. Halbert also performed services in connection with an appeal of the dismissal order. Before and after this bankruptcy case Halbert performed legal services for the debtor and other related entities, representing them in litigation in state court. The total of Halbert's invoices for these services was $101,119.81. When his clients were unable to pay these invoices, Halbert and his clients agreed to a premium of $65,000. As a condition of continued representation, the debtor executed a promissory note for $166,119.81.

In his testimony, Halbert estimated that 39% of his fees were for the bankruptcy case. The Court concludes that it would be more reliable to analyze the contemporaneous invoices and time records that Halbert periodically submitted to the debtor. (Exhibit J) These invoices are:

| | | |
|---|---|---|
| 1. | 3/5/97 | $33,165.28 |
| 2. | 4/9/97 | $ 1,631.00 |
| 3. | 5/5/97 | $ 3,525.00 |
| 4. | 5/5/97 | $ 2,800.00 |
| 5. | 10/14/97 | $56,373.46 |
| 6. | 12/19/97 | $26,059.71 |
| 7. | 4/10/98 | $ 6,189.36 |
| 8. | 4/21/98 | $65,000.00 |

As noted, the bankruptcy was filed on April 17, 1997. Halbert's cover letter for invoice no. 4, dated May 5, 1997, in the amount of $2,800.00, states, "Re: Current Invoice for Professional Services Rendered in Connection with Chapter 11 Case." The body of this letter reflects a similar intent.

The cover letter for invoice no. 5, dated October 14, 1997, in the amount of $56,373.46, states, "Re: Current Invoice for Professional Services Rendered in Connection with 5900 Associates L.L.C."

It appears that substantially all of the services disclosed in these two invoices, which total $59,373.46, were in connection with the debtor's bankruptcy. It further appears that some of the services reflected in invoices 1–3 were also in preparation for the bankruptcy filing and that therefore the total of the bankruptcy fees may actually be higher. Nevertheless, the Court will conservatively estimate that $55,000 in fees was for services for the bankruptcy. Fortunately for present purposes, a more precise calculation is unnecessary.

Accordingly, if under law Halbert's claim for $55,000 for bankruptcy fees is unenforceable because Halbert never obtained the required court approval, then the debtor's liability to Halbert would be at most $111,119.81 ($166,118.81—$55,000.00). As a result, the total of the debtor's liabilities would be only $786,119.81. This would then require a finding that the debtor was solvent at the time of the challenged transfer.

## III.

■ Halbert never obtained court approval for his fees in that case. The legal issue is whether such approval is required when a chapter 11 case is dismissed.

■ The Court concludes that such approval is clearly required and that therefore Halbert's claim against the debtor is unenforceable to the extent of the $55,000 in fees for services on the debtor's prior bankruptcy case. 11 U.S.C. § 330(a)

establishes the exclusive means by which a claim for professional fees relating to a bankruptcy case is allowed and a debtor is simply not liable for professional fees for services performed on a chapter 11 case which have not been allowed by the bankruptcy court. *See Jensen v. United States Trustee (In re Abraham),* 221 B.R. 782 (10th Cir. BAP 1998); *Jensen v. Gantz (In re Gantz),* 209 B.R. 999 (10th Cir. BAP 1997); *In re Jeanes,* 2004 WL 1718093, *2 (Bankr.N.D.Iowa June 17, 2004) ("Because § 330(a) requires court approval to create the obligation to pay the attorney's fees, absent court approval neither the debtor nor the estate is ever liable. Court approval under § 330(a) is what creates the liability, not the performance of the services.") (citations omitted.); *In re Mayeaux,* 269 B.R. 614, 628 (Bankr.E.D.Tex. 2001) ("The honest and comprehensive disclosure of compensation payments plays such a vital role in maintaining the integrity of the bankruptcy system that a bankruptcy court is compelled to enforce these disclosure provisions in an aggressive manner, even when the underlying case has been subsequently dismissed."); *In re Harris,* 258 B.R. 8 (Bankr.D.Idaho 2000); *In re Marin,* 256 B.R. 503, 507 (Bankr. D.Colo.2000) (*"There is no other way for an attorney to be paid!* An attorney who extracts payments from debtors other than pursuant to proper disclosure, or to allowance under section 330, stands in violation of the provisions of the bankruptcy Code[.]")(emphasis in original.); *In re Quaker Distributors, Inc.,* 189 B.R. 63, 68 (Bankr.E.D.Pa.1995) ("[T]here is no reason to conclude that dismissal of a case could or should eliminate bankruptcy court review of a debtor's transactions with its professionals."); *In re Fox,* 140 B.R. 761, 762 (Bankr.D.S.D.1992)("Counsel may only obtain or retain compensation upon court approval of fee applications[.]").

In *In re Lowe,* 97 B.R. 547 (Bankr. W.D.Mo.1987), the court stated:

The court has the inescapable duty to determine the reasonableness of attorney's fees awards and to exact forfeitures in cases such as this in which the facts clearly demonstrate such forfeitures to be appropriate. This duty must be performed even after dismissal of the case, for the court retains jurisdiction to determine the distribution of funds which remain *in custodia legis,* as do attorney's fee awards both on the basis of recognized jurisdictional principles and also on the basis [of] the court's well-established duty and power to regulate the practice of counsel before it.

*Id.* at 548–49 (citations and footnotes omitted).

Accordingly, the Court finds that at the time of the challenged transfer, the debtor's liabilities did not exceed the value of its assets and therefore the debtor was not insolvent. The defendant's motion for judgment of dismissal is granted.

An appropriate order will be entered.