In re **AUTO SPECIALTIES MANUFACTURING COMPANY, Debtor.**

**MANUFACTURERS NATIONAL BANK, a National Banking Association, Plaintiff–Appellant,**

v.

**AUTO SPECIALTIES MANUFACTURING COMPANY, a Michigan Corporation, Defendant–Appellee.**

No. 90–1966.

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 27, 1994.

Decided March 15, 1994.

A. Brooks Darling (briefed), Stowe, Darling & Buday, Traverse City, MI, for debtor.

Jeffrey R. Hughes (briefed), Joan Schleef, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for plaintiff-appellant.

Robert E. Wright, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, Richard F. Levy, Barbara C. Klabacha, Kirkland & Ellis, Chicago, IL, Thomas W. Schouten, Perry G. Pastula, Wyoming, MI, A. Brooks Darling, Stowe, Darling & Buday, Traverse City, MI, for defendant-appellee.

**360**

Before: MARTIN and BATCHELDER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, JR., Circuit Judge.

Manufacturers National Bank appeals the district court's judgment that the Bank is not entitled to attorney's fees, under 11 U.S.C. § 506(b), from Auto Specialties Manufacturing Corporation pursuant to a stipulation and loan agreement between the parties. The district court, in affirming a ruling by the bankruptcy court, found that the loan agreement was ambiguous as to whether Auto Specialties' liability for the Bank's "additional costs" in collecting its secured claim included attorney's fees incurred by the Bank while defending a separate adversary proceeding initiated by Auto Specialties. Because we conclude that the language in the agreement is unambiguous, and that it provides for the Bank's recovery of attorney's fees, we reverse.

Auto Specialties filed a Chapter 11 bankruptcy petition on October 3, 1988. At that time, Manufacturers National Bank had a secured claim of more than four million dollars against Auto Specialties. After filing for bankruptcy protection, Auto Specialties negotiated a lending agreement with Fidelcor Business Credit Corporation. One of Fidelcor's requirements for approving the agreement was that it have a first position lien in Auto Specialties' assets. Because Manufacturers Bank had a previously perfected lien in these assets, the Bank and Auto Specialties entered into a stipulation to provide adequate protection for the Bank's claims under the post-petition agreement with Fidelcor. The stipulation provided for a "Manufacturers Indebtedness Fund," to which Auto Specialties was required to contribute, in addition to other sums, $50,000 in order to "cover additional costs which may be added to the Manufacturers Indebtedness in the future" through protection of the Bank's secured claims. Joint Appendix at 62. This stipulation was approved by the bankruptcy court on December 14.

Shortly before March 1, 1989, Manufacturers Bank requested that Auto Specialties make the $50,000 payment into the Fund as required by the stipulation, and Auto Specialties refused. On March 13, Auto Specialties filed suit against the Bank, alleging fraud, breach of contract, and breach of fiduciary duty, and seeking equitable subordination of the Bank's claims to those of all other creditors.

Manufacturers Bank subsequently asked the bankruptcy court to enforce the stipulation, stating that it was entitled to have the $50,000 paid into the Fund in order to cover those attorney's fees that might be incurred in a successful defense of Auto Specialties' suit. The bankruptcy court determined that, in order to construe the "cover additional costs" language in the stipulation, it was necessary to examine both the underlying loan agreements and 11 U.S.C. § 506(b). Section 506(b) provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

It is undisputed that Manufacturers Bank is an oversecured creditor as defined in Section 506(b). Under this section, such a creditor is entitled to reimbursement of reasonable attorney's fees if those fees are expressly provided for in the loan and security agreements. *In re Schwartz*, 87 B.R. 41 (S.D.Ohio 1988). The two promissory notes executed pursuant to the loan agreements between Auto Specialties and the Bank state: "[i]f the interest and principal hereof are not fully paid at maturity (whether by demand or otherwise), [Debtor] shall pay the holder all of its reasonable costs of collection of the principal and interest including, but not limited to, reasonable attorney's fees." J.A. at 114, 213. The security agreement further provides: "[the debtor will] promptly, after being requested by [the Bank], pay to [the Bank] the amount of all reasonable expenses, incurred by [the Bank] in protecting and maintaining the collateral, and in enforcing the security interest created herein." J.A. at 213. The security agreement secures "the

reasonable cost of collection of principal and interest (including reasonable attorneys fees) under the loan agreement, notes or other indebtedness, owing by the Debtor to [Bank] in any manner and at any time." J.A. at 114–115, 213.

Manufacturers Bank argued that the costs of defending Auto Specialties' lawsuit were part of the "cost of collection of the principal," and were part of the expense of "protecting and maintaining the collateral" and "enforcing the security interest created." The bankruptcy court found that this language was unambiguous, but also decided that it did not apply to the situation in this case. Looking to the underlying intentions of the parties, the bankruptcy court found that the loan agreement language was only intended to cover the bank's reasonable fees for collection of principal and interest pursuant to the loan contract, and that Auto Specialties did not dispute the Bank's ultimate right to collect on that contract in its lawsuit. As a result, the court concluded that any attorney's fees incurred by Manufacturers Bank's in defending Auto Specialties' lawsuit were not covered under the loan agreement documents and 11 U.S.C. § 506(b).

On appeal, the district court stated that it agreed with the bankruptcy court that the agreement language was "ambiguous when applied to this situation." J.A. at 217. The district court then looked to the intentions of the parties, in reliance on *Central Jersey Dodge Truck Center, Inc. v. Sightseer Corp.,* 608 F.2d 1106, 1109 (6th Cir.1979), which recognizes that under Michigan law, the parties' intentions are central to interpreting a contract where the contract is not clear and unambiguous. The court concluded that the parties did not intend the loan agreement to cover attorney's fees incurred by the Bank in the adversary proceeding. Manufacturers Bank subsequently filed this timely appeal.

■ The bankruptcy court made a factual finding that the language in the loan agreement did not cover the bank's requested attorney's fees. Under Bankruptcy Rule 8013, a reviewing court may not upset the bankruptcy court's factual findings unless they are clearly erroneous. *Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir.1988). In applying this "clearly erroneous" standard, the reviewing court must be left with a "firm and definite conviction that a mistake has been committed," based on the record as a whole, before reversal is warranted. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Although the district court's reasoning is unclear, the court apparently agreed with what it saw as the bankruptcy court's implicit conclusion that the loan agreement language was ambiguous. The district court then stated that the bankruptcy court did not clearly err in finding, based on the intentions of the parties, that this language did not cover attorney's fees incurred in the adversary proceeding.

■ Strangely enough, the bankruptcy court began its analysis of the loan agreement by stating:

> The Court disagrees, however, that the language "cost of collection of principle [sic] and interest" is ambiguous. What has caused problems has been the facile manner in which this language has been applied to this situation. Literally, the bank is incurring reasonable fees in "collecting its claim."

> However, another basic tenet is that the construction of contracts is to effectuate the intentions of the parties. As Debtor correctly states in its brief, these intentions are ascertained by "considering not only the language of the contract, but also the circumstances surrounding the contract, including the situation of the parties."

J.A. at 207–208 (internal citations omitted). Thus, the bankruptcy court actually found that the agreement language was *un* ambiguous, and covered the requested fees by its own terms. Undaunted by this finding, the court went on to conclude that such coverage was not intended by the parties. An analysis of the intentions of the parties, however, is inappropriate where the contract in question is unambiguous. As this Court explained in *Central Jersey Dodge,* 608 F.2d at 1109 (quoting *DeVries v. Brydges,* 57 Mich.App. 36, 225 N.W.2d 195, 198 (1974)):

When the words of a written contract are clear and unambiguous and have a definite meaning, the court has no right to look to extrinsic evidence to determine their intent. Indeed, if the language of the entire contract is clear and unambiguous, there is no room for construction by the courts, and in such case, the language must be held to express the intention of the parties and the court need not search for meanings nor indulge in inferences as to the intention of the parties.

According to the bankruptcy court's own findings, the language of the loan agreements and stipulation was unambiguous. Nevertheless, the court immediately proceeded to analyze the parties' intentions. This action apparently led the district court to conclude that the bankruptcy court had found the contract language to be *ambiguous.* Based on the record as a whole, we believe that the bankruptcy court's explicit finding that the language was unambiguous is not clearly erroneous. Therefore, the district court erred in analyzing the agreement as if it were ambiguous, and both the bankruptcy and district courts erred under *Central Jersey Dodge* in considering the parties' intentions with respect to an unambiguous contract.

Auto Specialties contends that, even if the agreement language is unambiguous, the language still does not cover attorney's fees incurred by the Bank in the adversary proceeding, which Auto Specialties characterizes as litigation "unrelated" to the Bank's collection of its secured claim. This contention is without merit.

■ We note that the parties concede, under Section 506(b) of the Bankruptcy Code, that the existing loan agreement language would not cover attorney's fees for actions completely unrelated to the Bank's collection of its claim. *Cf. In re Cervantes,* 67 B.R. 816 (E.D.Pa.1986) (mortgage instrument language providing for fees only in the context of a foreclosure proceeding did not cover attorney's fees incurred in a bankruptcy proceeding, as no independent claims exist under Section 506(b) for fees apart from those provided for in the underlying agreement). It is clear, however, that the resolution of the adversary proceeding instituted by Auto Spe-

cialties is crucial to the Bank's ability to collect, and that the accompanying attorney's fees are covered under the literal language of the loan agreements. In this proceeding, Auto Specialties sought the equitable subordination of the Bank's claims to those of all other creditors. As the Bank correctly observes, the practical effect of such a proceeding, if successful, would be to deny the Bank payment of its previously secured claim because of Auto Specialties' inability to pay its creditors. This lack of resources, after all, is the reason that Auto Specialties sought bankruptcy protection in the first place. We also note that Auto Specialties' action was filed only two weeks after the Bank sought payment of the $50,000 into the Manufacturers Indebtedness Fund in accordance with the terms of the stipulation. The inescapable conclusion to be drawn from these circumstances is that Auto Specialties was trying to defer or completely avoid complying with the terms of the loan agreement and stipulation.

■ Finally, Auto Specialties maintains that the Bank's request for attorney's fees is unreasonable *per se* under Section 506(b), and should be denied in its entirety. However, "when fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's fees is mandatory." *In re Dalessio,* 74 B.R. 721, 723 (9th Cir. BAP 1987). Here, we have concluded that the attorney's fees are provided for in the loan agreement, and it is undisputed that the Bank is an oversecured creditor. Thus, although the bankruptcy court in the instant case may exercise its broad discretion in determining the exact *amount* of the fee award, according to the reasonableness of the Bank's request under Section 506(b), the court may not deny recovery altogether. *Id.*

For the foregoing reasons, the judgment of the district court is reversed.