**In re Roy C. IRICK and Elaine M. Irick, Debtors.**

**Bankruptcy No. 95–11024–B–11F.**

United States Bankruptcy Court, E.D. California, Fresno Division.

Sept. 29, 1997.

Hilton A. Ryder, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, CA, for Debtors.

Richard Grant, Sheinfeld, Maley & Kay, P.C., Dallas, TX.

Michael T. Hertz, Lang, Richert & Patch, Fresno, CA.

### ORDER RE OBJECTION TO ATTORNEY FEE REIMBURSEMENT CLAIMED BY CHEQUERS INVESTMENT ASSOCIATES

BRETT J. DORIAN, Bankruptcy Judge.

Debtors Roy and Elaine Irick ("the debtors") have objected to that portion of the claim of Chequers Investment Associates ("Chequers") which requests reimbursement of attorney fees and expenses.[1] By order of this court filed February 20, 1997, it was acknowledged that Chequer's claim for attorney fees and costs was $46,713.49 through October 31, 1996, plus additional fees and costs accruing after that date. By a pleading filed June 16, 1997, Chequers now asserts that it is owed $61,157.00 in attorney fees plus $11,564.00 in expenses, for a total of $72,521.00.

The debtors assert that the amount claimed is unreasonable as Chequers has always been fully secured by real and personal property; that payments have never been in default; and that since July 1, 1996, payments have been made according to Chequers' demands. Debtors also note that the plan they initially proposed left Chequers unimpaired.

In addition, the debtors claim that Chequers' retention of Texas attorneys, local attorneys, and San Diego attorneys resulted in unnecessary and duplicative services. They further claim that the contractual provision allowing recovery of attorney fees does not

---

1. The principal amount of Chequers' claim and issues relating to interest payable have been pre-viously resolved.

give rise to liability, as the subject note was not placed "in the hands of an attorney for collection, or to foreclose the instrument securing the note."

Chequers responds that it had valid business reasons for its use of three different attorney firms and that the amount of legal services utilized was due to delays by, and lack of cooperation from, the debtors and their attorney, as well as reorganization plan proposals that violated their contractual rights.

While Chequers' claim of approximately $1.2 million clearly represented a substantial amount, it is put in some perspective by the fact that the amount involved is roughly equivalent to the cost of two upscale, though modest residences in many California communities. It is also noted that this case involved novel challenges for the debtors in that the subject property, a motel, was located in part on property owned by the debtors and in part on property subject to a long term ground lease. That—plus disputes with other third party creditors—added complications to plan confirmation and a sale of the property.

Some two years after this case was filed, the motel was sold for an amount far in excess of Chequers' claim. (An earlier sale which had been approved in the interim fell through.) In addition, the debtors' schedules at the time the case was filed showed that the debtors had $2 million net equity in their property, none of which was ever lost through foreclosure or otherwise during the case.

While the operative language relied upon by Chequers to support a contractual right to attorney fees appears to contemplate that fees will be recoverable only in the event of judicial foreclosure or a collection action on the note itself, the court will view the language as being broad enough to support an award of costs under 11 U.S.C. § 506(b). Applying that section's requirement, however, that such costs be "reasonable", the court finds that the amounts claimed by Chequers fail that test.

The court does not dispute the right of any creditor to incur as much legal expense as the creditor deems necessary and appropriate. If a creditor wants a "dream team" and wishes to pay for one, it is not up to this court to interfere with that choice. The court is satisfied, however, that a creditor who is comfortably oversecured and is dealing with a very modest motel property acts imprudently when it retains as its primary counsel an out-of-state attorney far removed from the site of the pending litigation, litigation that is customarily appearance-intensive and lengthy. This is especially so where it chooses to take a highly active role in the case.

And where, as here, the creditor retains two additional law firms, each of which must become and remain educated as to the facts and progress of the case, the creditor moves even further away from what can be deemed reasonable. While it may have been appropriate at the outset to retain only Texas counsel (limiting local counsel to whatever services may have been necessary as a result of its *pro hac vice* contact role), it was not reasonable to retain Texas counsel in any sort of a primary role—given the facts of this case—once Chequers decided that it would assume a highly activist posture. Its local counsel, Michael T. Hertz, is an experienced, highly skilled and thoroughly effective Chapter 11 practitioner who could have ably and effectively pursued this matter on behalf of Chequers. The duplication of services resulting from the ongoing, active participation by two law firms cannot be viewed as reasonable for § 506(b) purposes. Similarly, the engagement of San Diego counsel, whose services do not appear in any event to be within the contractual scope of reimbursable legal costs, was unreasonable.

The court further finds that the substantial efforts of Chequers in drafting and proposing its own plan and disclosure statement were unwarranted. While it did take nearly two years to sell the motel, the debtors began their sale efforts shortly after the case was filed. Those efforts were complicated by disputes pertaining to the ground lease on which part of the motel was located and the assumption of the lease for Chapter 11 purposes. There was also a substantial dispute

with a roofing company on a claimed mechanic's lien.

While it did take just over two years to sell the motel and confirm a plan, the court cannot view the debtors' conduct as constituting unreasonable delay. As to the efforts of the United States Trustee to dismiss or convert the case, the court views those efforts as routine, *pro forma* actions which that office pursues in all Chapter 11 cases which do not move quickly to plan confirmation.

The court is satisfied that the debtors were sincere and conscientious in their dual efforts to either sell the motel or restructure its debt. The reality, however, is that it often takes time, even when offered at a marketable price, to sell a business property.

Most people see a cow and hear "moo". Oversecured creditors see a cash-cow and hear "moola". The view that an oversecured creditor can incur legal expenses with impunity in the expectation that its collateral will cover such costs is detrimental to the remedial goals of, and the possibilities of success in, a Chapter 11 proceeding. A creditor who fails to heed § 506(b)'s warning that only reasonable costs can be recovered does so at substantial risk.

Chequers was clearly entitled to be represented in the Chapter 11 proceeding in which it involuntarily found itself. It was proper for it to monitor the progress of the case and to respond to proposed plan treatment which it viewed as improper or unacceptable. There was also a clear need for Chequers to challenge the debtors' claim that there had been agreement as to an interest rate reduction, a dispute as to which Chequers prevailed.

The court notes, however, that the debtors' attorney, who performed substantial services for a year in this case before Chequers became active in it, and who had to deal not only with matters raised by Chequers but with substantial litigation involving other creditors, and who also succeeded in confirming a Chapter 11 plan and completing a sale of the motel property, has incurred fees and costs through the July 17, 1997, of $42,976.63, as compared to the $72,521.00 being sought by Chequers.

Despite its protestations to the contrary, Chequers use of legal services in this case was unreasonable and excessive. The court accordingly finds that Chequers reimbursement for legal costs pursuant to § 506(b) should not exceed two-thirds of the amount of legal fees incurred by the debtors.

The foregoing constitutes the court's findings of fact and conclusions of law. Accordingly,

IT IS ORDERED that Chequers Investment Associates is allowed costs pursuant to 11 U.S.C. § 506(b) in the amount of $28,-651.09.