**In re UNIVERSITY TOWERS OWNERS' CORP.,**
**Debtor.**

**Civ. No. 3:01CV258(JBA).**
**Bankruptcy No. 99–32448(ASD).**

United States District Court,
D. Connecticut.

May 24, 2002.

Marc A. Wallman, Brenner, Saltzman & Wallman, New Haven, CT, Martin W. Hoffman, Law Offices of Martin W. Hoffman, W. Hartford, CT, Hanon W. Russell, Law Offices of Hanon W. Russell, Milford, CT, for appellee.

Edward M. Fox, Pryor, Cashman, Sherman & Flynn, New York City, for appellant.

Patricia Beary, U.S. Trustee Office, New Haven, CT, trustee.

### *Ruling on Bankruptcy Appeal*

ARTERTON, District Judge.

J.P. Morgan Investment Management, Inc. ("Morgan") appeals from an order of the U.S. Bankruptcy Court for the District of Connecticut (Dabrowski, J.) disallowing payment of $12,604.50 in attorneys' fees. For the reasons set out below, the Court affirms the decision of the Bankruptcy Court.

## I. Background

University Towers Owners' Corp. ("UTOC") is a cooperative apartment corporation that filed a voluntary Chapter 11 bankruptcy petition on June 9, 1999, and currently acts as a debtor-in-possession under the Bankruptcy Code. Morgan is the holder of a mortgage note executed by UTOC in 1997 in the amount of $4,100,000, and is thus a secured creditor of UTOC. It is undisputed that Morgan is over-secured; that is, that the value of the assets securing UTOC's debt to Morgan exceed the debt itself.

After UTOC failed to file a plan of reorganization, Morgan began working on a

plan ("the first plan") for UTOC that provided for reinstatement of the mortgage and full payment of all creditors. Morgan worked on the first plan from December 1999 to March 2000, but thereafter decided not to file it, as in Morgan's judgment UTOC began making serious efforts to obtain new financing that would allow it to refinance the mortgage and emerge from bankruptcy. However, further events regarding the physical condition of UTOC's building convinced Morgan that such financing would not become available, and Morgan subsequently filed a different plan ("the second plan") in October 2000 proposing liquidation of UTOC's assets. While the second plan is allegedly "built off" the first plan, the Bankruptcy Court noted that it is conceded to be a separate plan. Opinion of January 15, 2001 [Doc. # 239] (hereinafter "Op.") at 6 n. 6.

In December 2000, two months after Morgan filed the second plan, UTOC filed its own plan of reorganization. The record reflects that UTOC's plan, rather than either of Morgan's, is the plan currently in use. Thereafter, Morgan sought reimbursement of the $12,604.50 in attorneys' fees it incurred in preparing the first plan. The Bankruptcy Court denied Morgan's motion, ultimately determining that the fees incurred were not reasonable.[1] Morgan's appeal followed.

## II. Standard of Review

■ This appeal is brought under 28 U.S.C. § 158(a), as Morgan appeals from a final order of the Bankruptcy Court. This Court reviews the Bankruptcy Court's conclusions of law de novo, *In re Ionosphere Clubs*, 922 F.2d 984, 988 (2d Cir.1990), and the Bankruptcy Court's findings of fact for

clear error, *In re Bayshore Wire Products Corp.*, 209 F.3d 100, 103 (2d Cir.2000).

■ A factual finding is clearly erroneous when " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001) (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). If the lower court's account of the evidence is " 'plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Id.* (*quoting Anderson v. City of Bessemer City*, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). " 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " *Id.* (*quoting Anderson*, 470 U.S. at 573–574, 105 S.Ct. 1504).

## III. Analysis

■ As an over-secured creditor, Morgan is allowed to recover the *reasonable* costs of collecting the mortgage, provided those costs are allowed in the underlying mortgage, to the extent they do not exceed the amount by which Morgan is over-secured:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim ... any reasonable fees, costs or charges provided for under the agreement under which such claim arose.

---

**1.** The Bankruptcy Court's initial ruling on this matter was made orally, but was subsequently vacated. A written opinion was issued there-

after, and it is this opinion that is addressed by this ruling.

11 U.S.C. § 506(b); *accord First W. Bank & Trust v. Drewes (In re Schriock Constr.)*, 104 F.3d 200, 201 (8th Cir.1997) (To recover attorney's fees under § 506(b), a creditor must establish: (1) that it is over-secured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney's fees) (citations omitted).

The Bankruptcy Court based its decision to deny the fees on its assessment that such fees were not reasonable. *See* Op. at 3–7.[2] In assessing the reasonableness of the fees at issue here, the Bankruptcy Court indicated that it "must examine the circumstances attending the preparation and filing of a creditor's plan and disclosure statement," Op. at 4, and was "mindful of bankruptcy waste which can be occasioned by secured creditors who fail to exercise appropriate restraint," Op. at 4–5. After undertaking this review, the Bankruptcy Court determined that "the efforts of Morgan's counsel in preparing, during the period from December 1999 to March 2000, its own draft Chapter 11 Plan and related Disclosure Statement" were not reasonable, Op. at 7, because the work product resulting from the fees was not utilized prior to the time Morgan submitted an invoice for those fees, and may, in fact, have never been used, Op. at 6. If the work product was used, it was only by incorporation into the second plan submitted by Morgan, which itself was never the plan actually used in the bankruptcy reorganizations.

The Bankruptcy Court acknowledged that Morgan was completely within its rights to expend resources to draft its own plan. Op. at 6; *see* 11 U.S.C. § 1121 (authorizing a party in interest, such as Morgan, to file a plan in the absence of the debtor having done so within a specified time period). Nonetheless, the Bankruptcy Court concluded that such an expenditure of resources on a plan that was never filed with the court was an unreasonable waste of resources that could not reasonably be charged to the estate under 11 U.S.C. § 506(b). Op. at 6–7. In this regard, the Bankruptcy Court cited *In re Irick*, 216 B.R. 433, 435 (Bankr.E.D.Cal. 1997), a portion of which explains:

> The view that an oversecured creditor can incur legal expenses with impunity in the expectation that its collateral will cover such costs is detrimental to the remedial goals of, and the possibilities of success in, a Chapter 11 proceeding. A creditor who fails to heed § 506(b)'s warning that only reasonable costs can be recovered does so at substantial risk.

*See also In re Lederman Enterprises, Inc.*, 106 B.R. 674, 683–684 (Bankr.D.Colo.1989) (findings that attorneys' fees incurred by a secured creditor in preparing a plan of reorganization that was never filed were not reasonable under 11 U.S.C. § 506(b)).

■ The Bankruptcy Court's determination of whether the fees at issue were reasonable is essentially a factual determination:

> The key determinant is whether the creditor incurred expenses and fees that fall within the scope of the fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be

**2.** The parties do not dispute that Morgan is over-secured by the requisite amount, and to the extent that there is now a dispute regarding whether the mortgage authorizes payment of fees, that dispute was not addressed by the Bankruptcy Court's decision. Moreover, any dispute regarding whether the mortgage authorizes collection of these fees is moot in light of the Court's affirmance of the Bankruptcy Court's conclusion that the fees were not, in any event, reasonable.

taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable.

*In re Dalessio*, 74 B.R. 721, 723 (9th Cir. BAP 1987). The Court is unpersuaded that the Bankruptcy Court's factual finding in this regard is incorrect, let alone clearly erroneous. The Bankruptcy Court, after undertaking the correct inquiry, concluded that the fees incurred preparing a plan *never filed with the Bankruptcy Court* were not reasonable under 11 U.S.C. § 506(b). There is nothing in the record that leaves the Court "with the definite and firm conviction that a mistake has been committed." *United States Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. 525. Rather, the Bankruptcy Court's conclusion appears to be well-supported by the record before it.

Morgan, relying on *Manufacturers Nat'l Bank v. Auto Specialties Mfg. Co. (In re Auto Specialties Mfg. Co.)*, 18 F.3d 358 (6th Cir.1994), argues that once the two predicates—over-secured status and authorization in the underlying agreement—are satisfied, allowance of some attorneys' fee is mandatory; the only issue is the amount. Morgan misapprehends the import of the cited case, however, because there, at least some of the incurred expenses were *reasonably* incurred, *see id.* at 362, while here, the Bankruptcy Court found that this particular expense was not reasonable *in toto*.

Next, Morgan asserts that UTOC's tardiness in filing its own plan justified Morgan's expenditure of resources to prepare its plan. This argument was considered by the lower court, Op. at 5, and rejected. The Bankruptcy Court noted that Morgan only felt compelled to file a plan in October 2000, whereas the invoice sought to be paid was submitted months earlier and concerned work completed from a prior period (December 1999 to March 2000),

and that the work was unnecessary when undertaken, which was less than seven months after UTOC had filed for bankruptcy. Op. at 5, *citing In re Wonder Corp. of America*, 82 B.R. 186, 191 (D.Conn.1988) ("inherent in the inquiry into reasonableness [under 11 U.S.C. § 506(b)] is a consideration of the necessity of the action from the perspective of the time at which it was taken."). While Morgan asserts that the Bankruptcy Court improperly penalized it for not knowing at the time the work was commenced that it may not be used, Morgan overlooks the fact that it began work on its own plan very early in the bankruptcy process. While the statutory "exclusivity period" in which UTOC alone could file a plan had passed, the Bankruptcy Court's conclusion that Morgan acted too hastily in formulating its own plan is supported by that court's expertise in the bankruptcy area, its familiarity with the particular timetable of this specific case, and its understanding of the normal "ebb and flow" of bankruptcy matters in general.

Finally, Morgan argues that even if its claim was not reasonable when incurred, it thereafter became reasonable when part of the work product financed by the fees at issue here was incorporated into the second plan submitted by Morgan. However, even this second plan, filed in October 2000, was never adopted. Additionally, while Morgan claims that the similarities between the first and second plans are sufficient to counsel in favor of what might be termed "retroactive reasonableness," Morgan's own account of the plans describes them as strikingly different in purpose: the first anticipated continued occupancy of the property by UTOC, while the second called for liquidation.

## IV. Conclusion

"Because it is for the most part in the best position to assess such questions,

the bankruptcy court is granted a substantial degree of discretion in assessing the reasonableness of claimed fees and costs." *Wonder Corp.*, 82 B.R. at 192 (*citing*, inter alia, 3 Collier on Bankruptcy ¶ 506.05). The Court concludes that substantial evidence exists on the record to support the Bankruptcy Court's determination that the fees at issue were not reasonable, and therefore the order of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.