ELECTRONIC CITATION:  2008 FED App. 0013P (6th Cir.)
File Name:  08b0013p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:   SCARLET HOTELS, LLC,      )
                                        )
                                        )     No. 08-8002
                Debtor.       )
_____     )

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee.
Bankruptcy Case No. 04-09853.

Submitted Upon Briefs: August 13, 2008

Decided and Filed:  August 22, 2008

Before: FULTON, McIVOR and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Bruce C. Bailey, Harold L. North, Jr., CHAMBLISS, BAHNER & STOPHEL, P.C., Chattanooga, Tennessee, for Appellant.  Gregory A. Cross, VENABLE LLP, Baltimore, Maryland, Joseph R. Prochaska, WILLIAMS & PROCHASKA, P.C., Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

THOMAS H. FULTON, Bankruptcy Appellate Panel Judge. Scarlet Hotels, LLC (the "Debtor") appeals the bankruptcy court's order awarding attorneys' fees and expenses to an oversecured creditor pursuant to § 506 of the Bankruptcy Code.[1]

_____

[1] 11 U.S.C. §§ 101 *et seq.*

# I.  ISSUES ON APPEAL

The issues presented on appeal are (A) whether the bankruptcy court improperly placed the burden upon the Debtor to prove that the oversecured creditor's requested fees were unreasonable; and (B) whether the bankruptcy court abused its discretion in reducing the creditor's $507,046.43 in requested fees and expenses by only $37,200.00.

# II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel for the Sixth Circuit (the "Panel") has jurisdiction to decide this appeal.  The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and neither party elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1).  A bankruptcy court's final order may be appealed as of right. 28 U.S.C. § 158(a)(1).  For the purpose of an appeal, a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798; 109 S.Ct. 1494, 1497 (1989).

A bankruptcy court's award of attorneys' fees is a final and appealable order. *See, e.g., Boddy v. U.S. Bankr. Court, W.D. Ky. (In re Boddy)*, 950 F.2d 334, 336 (6th Cir. 1991).  Whether to award fees and, if so, the reasonable amount of the fees are issues committed to the sound discretion of the trial court. *Amer. Commercial Barge Lines Co. v. NLRB*, 758 F.2d 1109 (6th Cir. 1985).  Thus, a bankruptcy court's decision to award fees is reviewed for an abuse of discretion. *In re Boddy,* 950 F.2d at 336.  A bankruptcy court abuses its discretion if it relied upon clearly erroneous findings of fact, improperly applied the law or employed an erroneous legal standard.  *Id.*

A bankruptcy court's finding of fact should not be disturbed simply because another trier of fact might construe the facts differently or reach a different conclusion.  *See Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).  It is not sufficient that it might have reached a different result if it had been the trier of fact; a finding of fact should be upheld unless, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  *U.S. v. Matthews (In re Matthews)*, 209 B.R. 218 (B.A.P. 6th Cir. 1997);  *In re Brunswick Apartments*,

215 B.R. 520 (B.A.P. 6th Cir. 1998). In contrast, no deference is given to a bankruptcy court's conclusions of law. *In re Eastown Auto Co.,* 215 B.R. 960, 964 (B.A.P. 6th Cir. 1998). "De novo means the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

## III. FACTS

The Debtor owns and operates a Holiday Inn Hotel in Murfreesboro, Tennessee (the "Hotel"). On or about May 8, 2003, as a part of its purchase of the Hotel, the Debtor assumed certain obligations set forth in a note and deed of trust (collectively, the "Loan Documents") in favor of CW Capital Asset Management, LLC[2] (the "Trust"). Pursuant to the Loan Documents, the Trust is entitled to recover the actual and necessary costs incurred in defending the Trust's rights under the Loan Documents.

When it purchased the Hotel, the Debtor and Holiday Hospitality Franchising, Inc. ("Holiday Inn") entered into a change of ownership license agreement dated May 8, 2003 (the "License Agreement"). Pursuant to the License Agreement, the Debtor was required to agree to the terms of a property improvement plan (the "PIP"). A dispute developed between the Debtor and Holiday Inn regarding the PIP.

On August 13, 2004, as a result of its dispute with Holiday Inn, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. In a nutshell, the Debtor's bankruptcy case was a single asset real estate case in which the Trust had the only significant claim and the Trust was oversecured from the inception of this case. The Trust employed two firms as counsel in this case, Venable LLP and Williams & Prochaska.

The bankruptcy court described the case as having three phases. The first phase was the "Holiday Inn phase," from August 2004 to February or March 2005, which was concerned mostly with whether the Hotel would or would not be a Holiday Inn. The second phase was the "PIP

---

[2] As "Special Servicer for LaSalle Bank National Association, Trustee for certificate-holders of Mortgage Capital Funding, Inc., Commercial Mortgage Pass-Through Certificate Series 1998 MC3."

phase," from February or March 2005 to November 30, 2006, which was concerned mostly with the Debtor's obligation to make over a million dollars worth of renovations to the Hotel. The third phase was the "confirmation phase," from November 30, 2006 to July 2007, which was concerned with achieving approval of a disclosure statement and confirmation of a plan.

> The bankruptcy court found that during the Holiday Inn phase and PIP phase:
>
> the Debtor couldn't seem to get the details right. The details are things like the Debtor's estimates about when work was going to be completed on the project. ... They didn't file a motion to assume the contract [with Holiday Inn], then they did file a motion to assume the contract, then they withdrew the motion, then they filed another motion.[3]

This inability resulted in disputes between the parties and significant litigation. That dynamic continued through November 2006 when the Debtor assumed the License Agreement and completed the PIP. Venable LLP's fees attributable to the Holiday Inn phase totaled $69,791.17 (for 280.6 hours at an average hourly rate of $249.25) while its fees attributable to the PIP phase totaled $76,561.88 (for 274 hours at an average hourly rate of $279.42).

Disputes continued into the confirmation phase. By this time, however, the Hotel had been renovated. The bankruptcy court saw this phase as one that should have been marked by fewer and less-intense disputes. Venable LLP's fees attributable to the Confirmation phase totaled $39,172.25 (for 159 hours at an average hourly rate of $246.36) while Williams & Prochaska's fees attributable to this phase were approximately $8,500.00. The bankruptcy court found over one-half of these fees, $24,000.00, to be unreasonable.

Cash collateral disputes between the Debtor and the Trust persisted throughout all three phases of the case (August 2004 to July 2007) with no final agreement on the Debtor's use of funds. The bankruptcy court found that, after completion of the PIP, the Trust's continued litigation of issues relating to cash collateral became unreasonable. Venable LLP's fees attributable to cash collateral and other case administration issues totaled $165,158.45 (for 663.7 hours at an average hourly rate of $248.84). The bankruptcy court calculated the total fees related to cash collateral

---

**3** App. 00679-80.

issues arising after the November 30, 2006, completion of the PIP to be $23,000.00. The bankruptcy court found one-half of these fees, $11,500.00, to be unreasonable.

## IV.    DISCUSSION

The parties do not dispute that, under 11 U.S.C. § 506(b), the holder of an oversecured claim shall be allowed "any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." This provision is not, however, a blank check for oversecured creditors to act without regard to any limits. *In re Irick*, 216 B.R. 433 (Bankr. E.D. Cal. 1997) ("A creditor who fails to heed § 506(b)'s warning that only reasonable costs can be recovered does so at substantial risk."). The fees must be reasonable. "Reasonable" fees are those that are "necessary to the collection and protection of a creditor's claim," and may include "participation in the bankruptcy proceeding until the collateral is sold, a plan is confirmed or the case is converted or dismissed." *In re Kroh Bros. Dev. Co.,* 105 B.R. 515, 521 (Bankr. W.D. Miss. 1989); *see also In re Auto Specialties Mfg. Co.,* 18 F.3d 358, 360 (6th Cir. 1994) (oversecured creditors are entitled to reasonable attorneys fees). In addition, courts consider whether a creditor's actions are the kind of reasonable action a similarly situated creditor would have taken. *See Ryker v. Current*, 338 B.R. 642, 651 (D.N.J. 2006).

### A. The Burden of Proof

The burden of proof in all fee matters is on the applicant. *In re Swartout*, 20 B.R. 102 (Bankr. S.D. Ohio 1982), and citations therein; *In re Underground Utilities Constr. Co., Inc.*, 13 B.R. 735 (Bankr. S.D. Fla.1981); *In re Olen*, 15 B.R. 750  (Bankr. E.D. Mich. 1981). Thus, the Trust had the burden of proving that the fees were reasonable.

The Debtor argues that the bankruptcy court did not place the burden of proof on the Trust, but instead incorrectly placed on the Debtor the burden of proving that the fees were unreasonable. The bankruptcy court's oral opinion is quite lengthy, but the following excerpts from the bankruptcy court's oral opinion, beginning at Appendix 00671, shed light on this issue:

> It is important for the record to reflect that I have read all of those exhibits, right down to trying to figure out whether the amounts by which bills were reduced corresponded to individual dates, times for travel and other things.

> I made charts last night, did some of the same things you all did in evidence here today, and as a result, I have a very clear picture about this case.
>
> It also needs to be said for the record that I've been the Judge in this case from its inception in August of 2004. We're more than three years now into this case ... I've been at every hearing, with one possible exception ....
>
> The point made is that I'm intimately familiar with both the facts and the parties and the apparent behavior of the parties in court in this matter.
>
> In terms of law ... The law that's applicable to what's going on here today ... provides that reasonable fees, costs and charges provided for under an agreement are included in an over-secured creditor's claims, the magic words being reasonable fees.
>
> ... [T]he reasonableness part of that is my task here today.

The bankruptcy court reflected on the factors to be considered in determining reasonableness. It considered the following factors, cited in *In re Beyer*, 169 B.R. 652, 655 (Bankr. W.D. Tenn. 1994):

> (1) the nature, extent, length and value of the services rendered;
> (2) the bankruptcy and non-bankruptcy experience, reputation, and ability of the attorneys;
> (3) awards in similar cases;
> (4) the novelty and difficulty (or lack thereof) of the questions presented;
> (5) the skill requisite to perform the legal services properly;
> (6) the customary fee;
> (7) professional time actually spent;
> (8) amount involved in potential risk;
> (9) the results of the cases;
> (10) specialty in which the attorneys may be practicing;
> (11) fees sought to be applied;
> (12) distinction between partner and associates time;
> (13) costs of comparable services;
> (14) use (or lack thereof) of paralegals; and
> (15) duplication of efforts.

With these factors in mind, the bankruptcy court summarized the length, complexity and innumerable hearings that occurred in the case as resulting from two reasons. First, the bankruptcy court noted Trust's chosen strategy of "intense if not excessive litigation." Second, the court noted:

> ...that the Debtor came in without the skills and preparation necessary to easily accomplish the reorganization of the hotel down in Murfreesboro. And as a result this became a convoluted and unnecessarily difficult and unnecessarily long litigated Chapter 11 case.
>
> If it had been a sophisticated, capable, fully operational debtor, I would substantially reduce, the fees, costs and expenses that the trust incurred ... but I can't approach the case that way because I believe there is shared responsibility for what happened in this case ...

Appendix 00675.

The bankruptcy court recited the history of the case at length and found that in the later part of the case, the Trust's actions became unreasonable. The court stated:

> Most of the unreasonableness, in my opinion, developed after November of 2006. Prior to November of 2006 I am hard pressed to do much more than a couple of minor little adjustments. By hard pressed I mean I see unreasonableness on both sides of this case prior to that point in time. A Debtor that was unreasonably difficult at getting the details right, at making promises and keeping promises, and a Trust that was litigating everything in an excusable environment, in my opinion prior to late 2006.

Appendix 00683-84. Following a more detailed analysis of some the fees requested, and a determination that certain of them were unreasonable, the bankruptcy court stated:

> That is important to set some context for why I believe the burdens of proof came out as they did here. I don't think that the debtor carried its burden with respect to its objections to many of the things that happened in the early phases of this case, ... But I also don't believe that the claimant carried its burden of proof with respect to the later stages of this case when things had really, really changed.

Appendix 00700.

The Debtor makes much ado about this last statement by the bankruptcy court. It forms the basis for the Debtor's argument that the bankruptcy court erred as a matter of law. The Debtor's argument, however, ignores the remaining 28 1/2 pages of transcript. The Trust's argument that the detailed oral opinion by the bankruptcy judge makes clear that he made an independent finding of reasonableness based on the evidence presented, including the detailed description of the services rendered and the supporting documentation is more persuasive. The bankruptcy court did not

misplace the burden of proof. It required the Trust to show the reasonableness of its fees, conducted an analysis of the factors relevant to making such a determination based on the evidence presented to it and, as a result, found certain fees to be reasonable and others not.

### B.  Reasonableness of Fees

In the Sixth Circuit, the standard for determining the reasonableness of fees has been stated as follows:

> The amount of an attorney's fees '* * * is peculiarly within the discretion of the Court because the attorney is an officer of the court. * * *' *Noone v. Fisher*,supra, 45 F.Supp. at 656(9). The reasonableness of the allowance '* * * is to be determined upon a consideration of all the facts and circumstances presented by the record, primarily the amount involved and available, the nature of the responsibility assumed by the attorneys, the character and extent of the services which they have performed, not only in the technical litigation itself, but also in matters arising out of and incidental to such litigation.
>
> * * * These matters are within the domain of legal knowledge, and, therefore, opinion testimony by lawyers of experience and reputation is admissible as expert testimony to assist the Court. But the Court, on the theory that judges have first hand experience and knowledge of the subject, is the final arbiter, and is not bound by the opinion of the professional legal experts who testify.
>
> "The allowance * * * should be an exercise of judicial discretion, founded upon the knowledge of the court making the allowance of the real value of the services performed, and should not be rested upon the testimony of experts as to the general value of professional services.' *Hitchcock v. American Pipe & Const. Co.*, 90 N.J.Eq. 576, 107 A. 267, 269.
>
> 'Except for these general principles, which are recognized * * * in the decisions of this Court * * *, there is no formula, or set rule, by which the value of legal services may be appraised, and the amount which would represent reasonable compensation determined. * * *' *Carmack v. Fidelity-Bankers Tr. Co.* (1944), 180 Tenn. 571, 581-582(8), (9, 10), 177 S.W.2d 351, 355(8), (9, 10).

*Quaker Oats Co. v. Burnett*, 289 F. Supp. 283, 286-87 (E.D. Tenn. 1968), cited with approval in *Womack Lumber Co., Inc. v. Guaranty Mtg. Co.* (*In re Bain*), 527 F.2d 681, 687 (6th Cir. 1975). Particular deference is given to a bankruptcy court's review of fee applications because the bankruptcy court has intimate knowledge of the case and the efforts expended and the value of services rendered. *See, e.g., Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978) ("An

appellate court is not warranted in overturning the trial court's judgment [re: attorneys' fees] unless under all of the facts and circumstances, it is clearly wrong."). The bankruptcy court is not required to address in detail, in its opinion, each line item of the fee application.

> However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision. ... Where facts which will support a judgment can be inferred from a [trial] court's other findings, an appellate court will deem that such inferences were drawn.

*In re Dolph*, 215 B.R. 832, 834 (B.A.P. 6th Cir. 1998) (internal citations omitted).

The Debtor raised specific questions as to the Trust's employment of multiple lawyers to represent it in the case, overlawyering by the Trust's multiple counsel and the expenses of the Trust's inspector, DePalma.

With respect to the allegations of the Trust's overlawyering, the bankruptcy court noted particular instances where there appeared to be overlawyering. For example, the bankruptcy court noted that there were four different lawyers at Venable LLP, all working on the objection to confirmation and found that at least half of the time spent was unreasonable. "It was overzealous; it was poor judgment by the Trust with respect to the economics of the case." Appendix 00685. The Court reduced the attorneys' fees related to the objection to the disclosure statement and to confirmation by $24,000.00 (half of the time charged). In addition, the bankruptcy court found another $11,500.00, charges for half the time spent litigating cash collateral matters in the latter phase of the case, to be unreasonable. We conclude that the bankruptcy court made sufficient findings of fact to support its conclusion as to which fees should not be allowed as the result of overlawyering.

With respect to the allegations that the expenses of the Trust's inspector, DePalma, were not reasonable, the bankruptcy court found that:

[b]ut for the Debtor's difficulties during the PIP period in this case, I would substantially reduce or refuse those fees altogether. ... I believe that they could have accomplished that much less expensively in other ways, but I'm not going to reduce the bill or eliminate that expense and the reason is that's all hindsight what I just gave you. In hindsight the Depalma expense was excessive and unnecessary. At the time this Depalma stuff began, right when the PIP was doing, at that time there was still risk and uncertainty with respect to the management capability and likelihood of success of current management of this Debtor. ... [A]t the time I don't think the Trust was unreasonable in engaging a professional and sending them down there once a month to look at this and make sure that something was happening that was consistent with the PIP responsibilities of the Debtor.

Appendix 00690-91. In light of the foregoing, we conclude that the bankruptcy court made sufficient findings of fact to support its allowance of the DePalma expenses.

The bankruptcy court did not specifically address the allegation that it was unnecessary and unreasonable to have an attorney from Venable LLP and an attorney from Williams & Prochaska present at almost every hearing. As Debtor points out, it is not that local counsel is prohibited, but if local counsel is engaged then special care must be taken to avoid duplication of efforts. *In re Automobile Warranty Corp.*, 138 B.R. 72, 79 (Bankr. D. Colo. 1991). The testimony presented to the bankruptcy court at the hearing on the Trust's fee application reflects that local counsel, Williams & Prochaska, had discounted its hourly fee for this engagement by 20 percent. In addition, Venable LLP voluntary reduced its fees, prior to submitting its fee application, by $58,000.00 and the bankruptcy court took that into consideration. *See* Appendix 00658 and Appendix 00686. According to the testimony, these write downs reflect, *inter alia,* adjustments for duplicative and inefficient time entries. *Id.; see also,* Appendix at 00487-00542 (showing some downward adjustments for "conference" and "local counsel" time). Although the bankruptcy court could have addressed the Trust's engagement of multiple counsel with more specificity, we are not left with a definite and firm conviction that a mistake has been committed. Therefore, we will not disturb the bankruptcy court's findings.

## V. CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.