**In re US FLOW CORPORATION, et al., Debtors.**

No. 03–09863.

United States Bankruptcy Court, W.D. Michigan.

Oct. 29, 2005.

Robert S. Hertzberg, Esq., Pepper Hamilton, LLP, Detroit, MI, for Unsecured Creditor Committee of US Flow Corp.

D. Tyler Nurnberg, Esq., Kaye Scholer, LLC, Chicago, IL.

Michael V. Maggio, Esq., Office of the United States Trustee, Grand Rapids, MI, U.S. Trustee.

## *OPINION REGARDING POSSIBLE DISGORGEMENT OF CARVE-OUT FUNDS*

JAMES D. GREGG, Bankruptcy Judge.

### *I. ISSUE*

This issue arises in one of those detestable administratively insolvent estates. Must court-appointed professionals in the chapter 11 case disgorge carve-out funds approved by the court pursuant to a DIP financing order? Is the carve-out defeasible in order to benefit other administrative claimants resulting from the conversion of the chapter 11 case to chapter 7?

### *II. JURISDICTION*

The court has jurisdiction over these jointly administered cases pursuant to 28 U.S.C. § 1334. In accordance with local rule, the case and the contested matter have been referred to the bankruptcy court for determination. L.R. 83.2 (W.D.Mich.). This contested matter is a core proceeding, 28 U.S.C. § 157(b)(2)(A) and (D), because it arises out of this court's previous DIP financing order and affects the administration of this bankrupt-

cy estate. The following constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

### III. FACTS

The facts are relatively straightforward. US Flow Corporation and four other related corporations ("US FLOW") filed chapter 11 cases on August 12, 2003. The chapter 11 cases were then jointly administered. This court [1] appointed two professionals: Kaye Scholer, attorneys for U.S. FLOW, and Pepper Hamilton, attorneys for the Official Committee of Unsecured Creditors. An application was filed to appoint a third professional, FTI Consulting. However, as of this date, no appointment order is entered on the docket.[2]

The chapter 11 case was short lived. Less than one month later, on September 9, 2003, the case was converted to chapter 7. Without question, the bankruptcy estate is administratively insolvent. Shortly after conversion, the chapter 11 insolvency was approximately $5 million.

During the chapter 11 case, on August 14, 2003, the court entered an interim order authorizing use of cash collateral which automatically terminated on August 22, 2003. US FLOW filed a second emergency motion [3] to obtain postpetition financing from its senior lenders and for continued authority to use cash collateral. The United States Trustee ("UST") and the Official Committee of Unsecured Creditors ("Committee") filed separate objections to U.S. FLOW's financing request. On August 25, 2003, the court authorized DIP financing and continued use of cash collateral in its Second Interim Order (I) Authorizing Debtors' Use Of Cash Collateral; (II) Granting Adequate Protection; And (III) Scheduling Additional Hearing Thereon, (the "Second Interim Order"). In this order, a $55,000 carve-out to benefit chapter 11 court-appointed professionals was created.

The Second Interim Order expired by its own terms on September 3, 2003. Further negotiations were futile and, after objection by the UST and Committee, U.S. FLOW's continued request to use cash collateral was denied by the court. US FLOW, and the related debtors, ceased operations and the case was converted to chapter 7.

The Second Interim Order created the carve-out to pay statutory fees and the fees of the chapter 11 court-appointed professionals.

---

1. Honorable Jo Ann C. Stevenson was assigned these cases. She handled all hearings, and entered all DIP financing orders, during the pendency of the chapter 11 case. She also appointed the chapter 11 professionals. After conversion to chapter 7, the undersigned judge assumed the responsibility to handle these cases because the previous judge encountered a conflict. After this opinion is released, these cases shall be reassigned to the previous judge because the conflict no longer exists.

2. This is a ministerial act that may soon be accomplished upon request by the consultant. For purposes of this opinion, the court will presume that there are three court-appointed professionals in the chapter 11 case.

3. The title of the motion was "Emergency Motion For Interim And Final Orders" Under 11 U.S.C. §§ 105(a), 361, 362, 363 and 364 Authorizing Debtors To Obtain Postpetition Financing, Authorizing Continued Use Of Cash Collateral, Granting Liens And Superpriority Administrative Claims, Providing Adequate Protection, Modifying The Automatic Stay, And Scheduling Final Hearing Pursuant To Bankruptcy Rule 4001(c), referred to as the "Emergency Motion". The provisions of the Emergency Motion are sometimes important because they are incorporated by reference into the Second Interim Order.

The term "Carve–Out" means, for purposes of this Second Interim Order, (i) the unpaid fees of the clerk of the Bankruptcy Court and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b) (the "Statutory Fees") and (ii) the aggregate allowed unpaid fees and expenses payable under Sections 330 and 331 of the Bankruptcy Code to professional persons retained pursuant to an order of the Court by the Debtor or any statutory committee appointed in this Chapter 11 case not to exceed $55,000 in the aggregate.

Second Interim Order, ¶ 16.

In the Second Interim Order, numerous participating banks[4], which collectively held a first lien position on U.S. FLOW's collateral, and Linsalata Capital Partners Fund III, L.P., which held a second lien position, (collectively the "Secured Creditors"), consented to U.S. FLOW continuing to use cash collateral subject to specified terms and conditions. The Secured Creditors were given replacement liens in substantially all of U.S. FLOW's property. Their liens were deemed to be valid, perfected, and indefeasible in the bankruptcy case. The Banks' replacement lien and Linsalata's replacement lien were deemed to "be senior to the rights of the Debtors and any successor trustee or other estate representative" in the bankruptcy cases. Second Interim Order, ¶¶ 9 and 10. However, it was expressly recognized that the $55,000 carve-out was superior to the Secured Creditors' interests in the collateral. *Id.; see also* Emergency Motion, ¶¶ 28 and

29. Although the Second Interim Order was terminated upon conversion of the chapter 11 case to chapter 7, ¶¶ 4 and 5(iii), the order further provides that the rights and obligations of U.S. FLOW and the Secured Creditors "shall survive such termination." Second Interim Order, ¶ 4. It explicitly states that the "Second Interim Order does not create any rights for the benefits of any third party, creditor, or any direct, indirect, or incidental beneficiary." Second Interim Order, ¶ 23. Lastly, it provides that the court "shall retain jurisdiction to resolve issues which arise" under the order. Second Interim Order, ¶ 19.

After conversion, the UST requested the court determine that "the $55,000 carve-out is property of the Chapter 7 estate, to be distributed according to the priorities of the Bankruptcy Code." The court-appointed professionals request a determination that the $55,000 carve-out be distributed to them.[5] The Banks, which hold the funds, take no position: they will pay the funds in accordance with a court order.

## IV. DISCUSSION

### A. Analysis of Specker.

The Sixth Circuit has held that interim compensation granted in a chapter 11 case must be disgorged in a converted chapter 7 case "when necessary to achieve *pro rata* distribution" among similarly situated creditors. *Specker Motor Sales Co. v. Ei-*

---

4. National City Bank, Key Corporate Capital, Inc., U.S. Bank National Association, Bank of America, N.A., Bank One, N.A., Fifth Third Bank (Northeastern Ohio), Fifth Third Bank (Western Michigan) and GE Capital Corp., collectively the "Banks."

5. The court-appointed professionals request that the carve-out funds be divided among them and disbursed immediately. However, based upon the record, there is currently no written agreement to divide the proceeds among the three court-appointed professionals. Further, although fee applications have been submitted, the docket does not disclose entries of any orders. Without question, after orders are entered, the aggregate allowed fees of the professionals shall greatly exceed the $55,000 carve-out.

*sen,* 393 F.3d 659, 664 (6th Cir.2004).[6] The Sixth Circuit stated "11 U.S.C. § 726(b) plainly mandates *pro rata* distribution of assets among creditors in the same statutory class." *Id.* at 662. Although the Bankruptcy Code establishes a "hierarchy of creditors" and at the top are "administrative claimants," when there are multiple administrative claimants, each "is similarly situated" to the others. *Id.* In *Specker,* the retainer[7] was held in trust for the bankruptcy estate, and remained property of the estate notwithstanding the payment of it to the chapter 11 debtor's attorney. *Id.* at 663.

*Specker* stands for the proposition that prepetition retainers, which are considered property of the estate, shall be disgorged to achieve *pro rata* distribution between similarly situated creditors, when a chapter 11 estate later proves to be administratively insolvent. In hindsight, it is easy to see that *Specker* was very narrowly decided. None of the three courts, each which rendered written opinions, addressed issues relating to state law attorneys' liens[8] or possible setoff rights[9] under 11 U.S.C. § 506(a).

Also, *Specker* does not address an instance when a court-ordered carve-out is established or when a court-appointed professional is paid from a secured creditor's property rather than property of the estate. *Specker* does not address the issue before this court.

**B.** *Validity And Enforceability Of The Carve–Out.*

■ One court has defined a carve-out as "[a]n agreed upon term in a cash collateral stipulation where a specific amount of the cash collateral, either in existence or to be generated, is earmarked for the payment of counsel fees and disbursements where the payment thereof is not conditioned upon a specific event or occurrence." *Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.),* 187 B.R. 856, 860 (Bankr.E.D.N.Y.1995), *aff'd,* 153 F.3d 61 (2d Cir.1998). Another commentator has defined a carve-out as "a portion of postpetition loan proceeds that is reserved specifically to pay attorneys and other professionals of a DIP." Craig B. Cooper, *The*

**6.** Both the bankruptcy court and the district court, on appeal, determined that disgorgement was required. *In re Specker Motor Sales Co.,* 289 B.R. 870 (Bankr.W.D.Mich.2003) (11 U.S.C. § 726(b) requires mandatory disgorgement); *Specker Motor Sales Co. v. Eisen,* 300 B.R. 687 (W.D.Mich.2003) (§ 726(b) mandates that all claims, including those held by administrative claimants, shall receive *pro rata* distribution).

**7.** In *Specker,* the Sixth Circuit seems to state that the chapter 11 debtor's attorney received a postpetition retainer. *Specker,* 393 F.3d at 661 (after the chapter 11 filing, the bankruptcy court authorized the debtor to employ an attorney and "[a]t that time" the attorney was paid a $10,000 retainer). A careful review of the record establishes that the attorney was paid the $10,000 retainer *prior* to filing the chapter 11 case although it may have been "approved" by the bankruptcy court at the

time the attorney's employment was authorized. *Specker,* 289 B.R. at 871. Although the Sixth Circuit's discussion in *Specker* does not distinguish between prepetition and postpetition retainers, such a distinction may arguably be important. *See generally* Craig B. Cooper, *The Priority Of Postpetition Retainers, Carve–Outs, And Interim Compensation Under The Bankruptcy Code,* 15 Cardozo L.Rev. 2337 (1994).

**8.** This issue was raised during a recent case development presentation by Jonathan Landers, a leading bankruptcy commentator. Jonathan Landers, Remarks at Norton Institutes On Bankruptcy Law, Western Mountains Bankruptcy Law Institute, Jackson Hole, Wyoming (July 1, 2005).

**9.** This issue was raised during the same presentation at the Norton Jackson Hole seminar by the undersigned judge.

*Priority Of Postpetition Retainers, Carve-Outs, And Interim Compensation Under The Bankruptcy Code,* 15 Cardozo L.Rev. 2337, 2346 (1994).

This court has previously discussed carve-outs in connection with the Bankruptcy Code distribution provisions and the requisite subordination of an Internal Revenue Service tax lien to priority claims. *In re Fortier,* 299 B.R. 183 (Bankr. W.D.Mich.2003), *rev'd on other grounds,* 315 B.R. 829 (W.D.Mich.2004), *appeal docketed,* No. 04–2303 (6th Cir. Oct. 20, 2004).

> Although the term is widely used but rarely defined, a "carve-out agreement" is generally understood to be "an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out of its lien position." *See In re White Glove, Inc.,* No. 98–12493DWS, 1998 WL 731611, at *6 (Bankr.E.D.Pa. Oct.14, 1998). A true "carve out" requires the consent of the secured creditor, as "[t]he Code ... establishes that a secured creditor's collateral may only be diminished to the extent that the secured creditor waives its right to the protections afforded by the Code, or to the extent that the expense priority directly confers a benefit on the secured creditor." *Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp.,* 153 F.3d 61, 68 (2d Cir. 1998). *See also* Richard I. Aaron, *"Carve Out" As A Noun,* 7 J. Bankr.L. & Prac. 487, 487 (a "carve-out" occurs when fees for the debtor's attorney or other professionals are paid "by extracting them from the secured lender's *otherwise unassailable* collateral").

*Fortier,* 299 B.R. at 191 n. 14 (recognizing that the purported IRS carve-out was not "unassailable" because its lien was subject to subordination under 11 U.S.C. § 724(b)).

In the U.S. FLOW chapter 11 case, the Second Interim Order, coupled with the adoption by reference of the Emergency Motion, results in a transfer of the Secured Creditors' collateral proceeds to the court-appointed professionals. A natural reading of the Second Interim Order causes one to easily conclude that a carve-out was intended to be created and was created.

The carve-out was consented to by the Secured Creditors to be paid to a specified category of professionals.[10] The Bankruptcy Court approved the creation of the carve-out in the Second Interim Order and that order was not appealed. There has been no challenge to the validity or priority of the Secured Creditors' prepetition or postpetition liens. The liens are therefore unassailable. Stated differently, the liens are not avoidable and the proceeds transferred from the Secured Creditors for the benefit of the court-appointed professionals may not be recovered for the benefit of the bankruptcy estate. *See generally* 11 U.S.C. §§ 554–551.

### C. Does Specker Require Disgorgement Of The Carve–Out?

A common thread exists among the *Specker* decisions by the Sixth Circuit and the lower courts. The retainer in the debtor's attorney's trust account remained *property of the estate.* The fact that the debtor's attorney was paid did not alter the funds' character or source—the funds remained property of the estate. Because the chapter 11 estate was administratively insolvent and there was insufficient re-

**10.** The court rejects the UST's argument that the funds in question were a disguised § 506(c) surcharge. *See also* n. 13 below.

maining property of the estate to pay similarly situated creditors on a *pro rata* basis, the debtor's attorney was required to return the property of the estate to be equally divided among all chapter 11 administrative claimants.[11]

In *Fortier*, the IRS was paid proceeds from the sale of real property which secured its lien. Initially, the bankruptcy estate was not diminished because the IRS received what could be characterized as its own property. However, later in the chapter 7 case, it was determined that the IRS lien was subject to subordination under 11 U.S.C. § 724(b).[12] Basically, § 724(b) results in a partial avoidance of the taxing creditor's lien claim to be preserved for and distributed to other specified unsecured priority claimants. By operation of law, the proceeds from the sale of the IRS's collateral are property of the estate and are subject to the distribution under of the Bankruptcy Code. As discussed in *Fortier*, because the IRS lien position was "assailable," the carve-out in the prior sale order was defeated.

The U.S. FLOW Second Interim Order carve-out provisions differ greatly from the circumstances present in either *Specker* or *Fortier*. The property earmarked and conveyed for the benefit of the court-appointed professionals is specifically reserved solely for the purpose of compensating a category of chapter 11 professionals. There is no assertion that the Secured Creditors' liens, including the carve-out funds, may be avoided and recovered to become property of the estate. 11 U.S.C. § 541(a)(3) and (4) (property that is recovered or preserved for the benefit of the estate becomes property of the estate). One must conclude that the valid and indefeasible court-created carve-out is not subject to disgorgement.

One might argue, as has the UST in this case, that this result is unfair to other creditors. However, other creditors did not negotiate a carve-out for themselves. Other creditors did not successfully object to the entry of the Second Interim Order. Other creditors did not appeal the order which established the carve-out. Other creditors, even those who may belatedly challenge the validity of the carve-out, are not entitled to receive *any* of the funds transferred by the Secured Creditors from the proceeds of their collateral.[13]

The court believes it is now unfair to require the court-appointed professionals to lose their entitlement to the carve-out funds after they relied upon a final nonappealable court order. Contrariwise, if the carve-out was not permitted by the court, the professionals would have had to make a decision: either continue to provide representation in the chapter 11 case or decline further involvement and seek to withdraw. If the terms and conditions of the

---

11. Of course, chapter 7 administrative claims are first paid. 11 U.S.C. § 726(a)(1).

12. This is a special chapter 7 distribution provision. It requires that proceeds from property subject to an allowed secured claim for a tax be first distributed to administrative expenses and other priority claims that are ranked higher than tax priority claims. 11 U.S.C. § 724(b)(2) and (3).

13. The court recognizes that other creditors, through the efforts of the trustee, might receive the benefit of a surcharge of the Secured Creditors' collateral pursuant to 11 U.S.C. § 506(c); *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (the trustee has the statutory authority to recover costs and expenses incurred for the benefit of a secured creditor). Further, if the trustee is successful in surcharging a secured creditor's collateral, it has long been held in this district that the recovery shall benefit all creditors of the estate and not only the aggrieved creditor which provided goods or services that benefitted the secured creditor. *Boyd v. Dock's Corner Assocs. (Matter of Great Northern Forest Prods., Inc.)*, 135 B.R. 46, 65–67 (Bankr. W.D.Mich.1991).

carve-out contained in the Second Interim Order were disagreeable, parties-in-interest, including the UST, should have objected to the order before it was entered, or timely appealed the order after it was entered.[14]

The Bankruptcy Code, and other authorities, mandate that distribution shall generally be made on a *pro rata* basis to *similarly situated creditors*. In a legal memorandum, two of the three court-appointed professionals assert there is a prior agreement for a division of the carve-out funds. No such agreement has been filed or approved by this court. Therefore, unless a stipulated order is submitted to the court, signed by all three of the court-approved professionals, future distribution of the carve-out funds shall be made on a *pro rata* basis.[15]

### V. CONCLUSION

The carve-out funds are not now property of the bankruptcy estate and are not recoverable by the estate for the benefit of all of its creditors. The carve-out funds, pursuant to a prior court order, are earmarked for the exclusive benefit of the court-appointed chapter 11 professionals. Therefore, the requested disgorgement of the carve-out funds by the UST is denied. The court will determine the division of the carve-out funds between the court-appointed professionals in the future.

An order shall be entered accordingly.

---

**14.** Of course, a party might seek to set aside an order if an appropriate showing is made. *See* FED. R. BANKR. P. 9024 (incorporating FED. R. CIV. P. 60(b)). No assertions are present in this contested matter which would lead this court to set aside, or modify, the Second Interim Order.

**15.** If necessary, the court will schedule a hearing on the division of the carve-out funds. The professionals must first demonstrate that they have been properly appointed and that each of them have allowed administrative claims before any hearing takes place. In any event, the Banks shall not release the carve-out funds absent court order.