### In re APPALACHIAN STAR VENTURES, INC., Debtor.

No.  93–35224.

United States Bankruptcy Court, E.D. Tennessee.

March 9, 2006.

Linda V. Bailey, Esq., Bailey, Roberts & Bailey, P.L.L.C, Knoxville, TN, for N. David Roberts, Jr., Chapter 7 Trustee.

Fred M. Leonard, Esq., Bristol, TN, for Appalachian Star Ventures, Inc.

## MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

In *Specker Motor Sales Co. v. Eisen,* 393 F.3d 659 (6th Cir.2004), the Sixth Circuit Court of Appeals held that 11 U.S.C. § 726(b)[1] mandated the disgorgement of a retainer paid to a chapter 11 debtor's attorney when necessary to achieve a pro rata distribution among other administrative claimants in a case converted from chapter 11 to chapter 7. Not addressed in that case is the effect, if any, of an attorney's lien on a retainer under state law. This court concludes that because an attorney with a lien is not similarly situated with other administrative claimants, disgorgement is not required by 11 U.S.C. § 726(b).

### I.

The facts of this case are not in dispute. The debtor filed for relief under chapter 11 on December 30, 1993. An order was entered on January 28, 1994, approving the application of Fred M. Leonard as attorney for the debtor. The disclosure of compensation statement filed by Mr. Leonard on January 10, 1994, pursuant to Federal Rule of Bankruptcy Procedure 2016(b), indicated that the debtor had paid him a retainer of $15,000. On April 28, 1994, Mr. Leonard filed an application for interim compensation and expenses in the amount of $33,952.73. By order entered June 1, 1994, Mr. Leonard was awarded fees in the amount of $15,000, to be paid from the retainer held in escrow by Mr. Leonard, and expenses of $697.73, to be paid by the debtor from its operating account. The order reserved for future consideration the balance of the fee request. Subsequently, on September 16, 1994, this bankruptcy case was converted from chapter 11 to chapter 7. On September 29, 1994, Mr. Leonard filed a "Final Application For Compensation And Reimbursement of Expenses," seeking approval of the balance carried forward from his previous application, $18,255, plus additional compensation of $16,365 and reimbursement of expenses in the amount of $538.18. By order entered October 31, 1994, Mr. Leonard's application was approved although no further amounts were actually paid to him.

On January 19, 2006, N. David Roberts, Jr., the chapter 7 trustee in this case, filed

---

1. The text of 11 U.S.C. § 726 pertinent to this discussion reads as follows:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

. . .

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

the motion for disgorgement that is presently before the court. The trustee states in the motion that claims filed in this case exceed $1.5 million, that the dividend distribution will not reach beyond the administrative claims, that he has $20,224.68 on hand to pay administrative claims, that chapter 7 administrative claims to date total $16,650.29, and that chapter 11 administrative claims total $97,357.08. The chapter 11 administrative claims amount includes all of the fees and expenses awarded to Mr. Leonard, totaling $50,855.91, of which $15,697.73 has been paid. The trustee indicates in the motion that with the funds on hand, he will first pay in full the chapter 7 administrative claims, leaving a balance of $3,574.39 to be distributed among the chapter 11 administrative claimants. The trustee requests in the motion that the court enter an order directing Mr. Leonard to disgorge the interim compensation paid to him so that this amount can be added to the $3,574.39 balance and the total distributed pro rata among all chapter 11 administrative claimants. If such a distribution were to occur, Mr. Leonard would be entitled to a distribution of only $10,067.08. Therefore, according to the trustee, Mr. Leonard should be required to disgorge the sum of $5,630.65.

The trustee's motion is premised on § 726(b) of the Bankruptcy Code and its interpretation by the Sixth Circuit Court of Appeals in *Specker Motors,* a case with facts similar to those of the present case. In *Specker Motors,* the chapter 11 debtor's attorney had been paid a $10,000 retainer. Upon conversion of the case to chapter 7, the court approved the attorney's final fee application in the amount of $17,343.10 and permitted him to apply to that amount the retainer held by him. When it was subsequently determined that the estate's assets were insufficient to cover administrative claims, the bankruptcy court divided the assets pro rata among the five administrative claimants and ordered the debtor's attorney to disgorge $9,026.59 of the original $10,000 retainer since his pro rata share was only $973.41. The bankruptcy court's ruling was based on "the plain language of 11 U.S.C. § 726(b) [which] mandates disgorgement when necessary to achieve pro rata distribution among similarly situated claimants." *Specker Motor Sales Co.,* 393 F.3d at 661 (discussing the bankruptcy court's decision). This ruling was affirmed by both the district court and the Sixth Circuit Court of Appeals. *In re Specker Motor Sales Co.,* 289 B.R. 870 (Bankr.W.D.Mich.2003); *Specker Motor Sales Co. v. Eisen,* 300 B.R. 687 (W.D.Mich.2003).

### III.

In the present case, Mr. Leonard opposes the trustee's motion and asserts two arguments as to why the motion should be denied. The first contention is that the ruling in *Specker Motors* only involved the disgorgement of *interim* compensation. According to Mr. Leonard, the fee awarded to him was *final,* noting that his applications were properly noticed, there were no objections thereto, either by the chapter 7 trustee or the United States trustee, and there were no appeals of the orders awarding fees to him.

Mr. Leonard's recitation of the record is not entirely correct. While it is true that there were no previous objections to his fees or appeal of the fee orders, the order permitting Mr. Leonard to apply the retainer to the fees accrued to date was expressly an award of "interim compensation," in response to Mr. Leonard's "Application For Interim Compensation And Reimbursement Of Expenses." The second, i.e., final fee application, only sought approval of the additional fees that had accrued since the date of the first application

and the balance of the fees not approved in the first fee order. There was no request in the final application that the court give "final" approval to the $15,000 in interim fees previously awarded, nor does the order approving the application reference the earlier, awarded fees.

The court relays this information primarily to clarify the record since it appears to be of little consequence with respect to the disgorgement issue whether it was the initial order or subsequent, so-called "final" order that authorized Mr. Leonard to apply the retainer held by him in his trust account to the fees allowed by the court.[2] Regardless of the appellation, both awards were interim allowances pursuant to 11 U.S.C. § 331[3] and thus subject to subsequent review. As explained by the court in *Matter of Lockwood Corp.*, addressing the same argument by debtor's counsel in the same context:

> Creel & Atwood's argument overlooks the fact that if the funds it received were not allowed pursuant to section 331, Creel & Atwood would have had no statutory authority to receive payment on its claim prior to confirmation. Section 330 states, in pertinent part, "[a]fter notice to the parties in interest and the United States Trustee and a hearing, ... the court **may award** to a trustee, an examiner, a professional person ...

reasonable compensation" 11 U.S.C. 330(a)(1)(A) (emphasis supplied). In a Chapter 11 case, the payment of section 507(a)(1) administrative claims, which includes professional fees, would occur no sooner than the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A) or if converted to Chapter 7 at distribution pursuant to section 726. However, section 331 states in pertinent part "[a]fter notice and a hearing, the court **may allow and distribute** to such applicant such compensation or reimbursement." 11 U.S.C. § 331 (emphasis supplied). No plan was confirmed in the Chapter 11 case (thus no effective date for the plan) nor has the Chapter 7 Trustee initiated distribution pursuant to section 726. Thus the only Code provision that would have allowed Creel & Atwood to apply for and receive compensation and reimbursement is section 331. Therefore, Creel & Atwood's compensation was an award of interim compensation pursuant to section 331 and thus is subject to disgorgement.

*Matter of Lockwood Corp.*, 216 B.R. 628, 637 (Bankr.D.Neb.1997) (emphasis in original).

This argument was similarly rejected in *In re Metropolitan Electric Supply Corp.*, wherein fees had been awarded in an "final" order granting chapter 11 counsel's

---

**2.** Like Mr. Leonard, the attorney in *Specker Motors* had submitted his final request for fees and that request had been approved by the court. The Sixth Circuit noted in *Specker Motors* that the bankruptcy court had permitted the debtor's attorney to keep the $10,000 as "interim compensation," although from a reading of the opinion it appears that the retention was in connection with the attorney's "final" fee application. *Specker Motor Sales Co.*, 393 F.3d at 661.

**3.** This section provides:
> A trustee, an examiner, a debtor's attorney, or any professional person employed under

section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331.

final fee application filed shortly after conversion of the case from chapter 11 to 7.

The applications and resulting Orders of March 1993 are "final" only in the sense that they represent the last interim request of the Chapter 11 professionals. The denomination of those applications as "final" means, in this case, nothing more than that the probable intent of the applicants was to file no further requests for compensation arising out of the Chapter 11. These requests were made after the conversion of the case to one under Chapter 7, however, and the professionals involved knew, or should have know, of the requirements of § 726(b).

*Shaia v. Durrette, Irvin, Lemons & Bradshaw, P.C. (In re Metropolitan Elec. Supply Corp.)*, 185 B.R. 505, 510–11 (Bankr. E.D.Va.1995) (footnotes omitted). *Cf. In re Lochmiller Indus., Inc.*, 178 B.R. 241, 245, n. 18 (Bankr.S.D.Cal.1995) (concluding that even final orders for compensation under 11 U.S.C. § 330 are interlocutory and subject to review and modification while the case is pending). This court likewise finds without merit Mr. Leonard's assertion that disgorgement is not required because his fees were awarded pursuant to a "final" order.

■ The second contention raised by Mr. Leonard in defense to the trustee's disgorgement motion is not so easily dismissed. According to Mr. Leonard, *Specker Motors* may be distinguished from the present case because Tennessee law provides an attorney a lien on a retainer paid by a client, citing, *inter alia, Starks v. Browning*, 20 S.W.3d 645 (Tenn.App.1999) and *Mt. Pleasant Health Care Acquirors, Inc. v. Hidden Acres Assocs. (In re Hidden Acres Assocs.)*, 165 B.R. 842 (Bankr. M.D.Tenn.1993). As such, the argument goes, a chapter 11 debtor's attorney is a secured creditor to the extent of the retainer and therefore, is not similarly situated with other administrative claimants within the purview of § 726(b).

The issue of whether disgorgement is required if the attorney has a lien under state law was not raised or addressed in *Specker Motors*. *See In re U.S. Flow Corp.*, 332 B.R. 792, 795 (Bankr.W.D.Mich. 2005) (recognizing that "[n]one of the three [*Specker Motors*] courts, each which rendered written opinions, addressed issues relating to state law attorneys' liens"). Nor, to this court's knowledge, has a court within the Sixth Circuit addressed the issue in light of the *Specker Motors* decision. However, courts from other circuits have found the argument meritorious and have uniformly concluded that a state law lien trumps, or more accurately, prevents § 726(b) from coming into play. *See In re Printcrafters, Inc.*, 233 B.R. 113, 120 (D.Col.1999) (because under Colorado law a law firm had lien on prepetition retainer paid to it, the firm was not required to share the retainer with other administrative claimants); *In re Pannebaker Custom Cabinet Corp.*, 198 B.R. 453, 460 (Bankr. M.D.Pa.1996) (unless excessive or unreasonable, retainer not subject to disgorgement to achieve parity among administrative claimants due to attorney's superior priority as secured creditor); *In re Printing Dimensions, Inc.*, 153 B.R. 715, 719 (Bankr.D.Md.1993) (counsel not required to share prepetition retainer pro rata with other administrative claimants where retainer is treated as security or held in trust); *In re North Bay Tractor, Inc.*, 191 B.R. 186, 187–88 (Bankr.N.D.Cal.1996) (attorney's interest in retainer "is in the nature of a security interest, assuring the attorney of a minimum fee in the case" and to require attorney to disgorge the retainer so that other claimants of equal priority receive equal dividends would "undermine the purpose of retainers"); *Matter of K & R Mining, Inc.*, 105 B.R. 394, 397 (Bankr.

N.D.Ohio 1989) (rejecting under Ohio law the assertion that debtor's attorney was required to turn over his retainer to be shared pro rata by all administrative claimants); *In re Burnside Steel Foundry Co.,* 90 B.R. 942, 944 (Bankr.N.D.Ill.1988) (noting that retainer paid to chapter 11 debtor's attorney enables the attorney "to avoid the subordination of the Chapter 11 expenses of administration to those incurred in administering the Chapter 7 estate mandated by § 726(b)"); *In re Kinderhaus Corp.,* 58 B.R. 94, 97 (Bankr. D.Minn.1986) ("A prepetition retainer held in trust by a debtor's attorney ... is not ordinarily available as a source of payment for other administrative expense claims under 11 U.S.C. § 503(b) ...."); *cf. In re Cottrell Intern., LLC,* 2000 WL 1180282, *4 (Bankr.D.Col. July 19, 2000) (permitting postpetition retainer to debtor's attorney to stand as security for payment of fees allowed by the court, but noting that under 11 U.S.C. § 328 an order allowing employment on terms such as the payment of a retainer remains reviewable by the court and may be modified (with the result of possible disgorgement) if, within the language of the statute, "the terms and conditions prove to have been improvident ...").

In this regard, the chapter 7 trustee does not challenge Mr. Leonard's claim that he has, under Tennessee law, a lien on the retainer paid to him. As stated by the Tennessee Court of Appeals in *Starks v. Browning:*

> Most jurisdictions recognize some form of attorney's lien to secure a lawyer's claim for fees should a client fail to compensate the lawyer for the services rendered. While a lawyer's right to compensation remains based on contract, attorney's liens provide security for these contractual rights.

Two types of attorney's liens exist today either by the common law or by statute. The first type of lien is a retaining lien. A retaining lien is a possessory lien ... that permits a lawyer to retain a client's books, papers, securities, or money coming into his or her possession during the course of the representation until the attorney and client have settled their fee dispute or until the client has otherwise posted appropriate security for the outstanding fee....

The second type of lien, a charging lien, is based on a lawyer's equitable right to have the fees and costs due for the lawyer's services in a particular action secured by the judgment or recovery in that action.

*Starks v. Browning,* 20 S.W.3d at 650 (internal citations omitted). *See also In re Hidden Acres Assocs.,* 165 B.R. at 844 ("Tennessee law clearly provides for a retaining lien on a client's papers.").

■ As stated by the court in *Pannebaker Custom Cabinet Corp.:*

> A prepetition security retainer is a traditional, valid and proper means for an attorney for a Chapter 11 debtor-in-possession to secure some assurance of future payment for valuable services rendered during the course of a bankruptcy case. Such funds
>
> > are delivered essentially to serve as collateral security for subsequent payment of allowed fees, thus transforming the attorney into a secured creditor with a possessory perfected security interest in such monies to the extent that the retainer covers fees which are ultimately approved by the Court for services performed.

*In re Pannebaker Custom Cabinet Corp.,* 198 B.R. at 460 (quoting *In re Baltic Assocs., L.P.,* 1994 WL 791634 (Bankr. E.D.Pa. Mar.16, 1994)).

This court concludes that because Mr. Leonard held a lien on the retainer paid to him by the debtor, disgorgement is not required by § 726(b). The sole issue in *Specker Motors* was one of statutory construction: whether disgorgement under § 726(b) was mandatory, or discretionary as the Bankruptcy Appellate Panel had previously held in *In re Unitcast Inc.*, 219 B.R. 741 (6th Cir. BAP 1998). *Specker Motor Sales Co.*, 393 F.3d at 662. *See also In re U.S. Flow Corp.*, 332 B.R. at 795 ("*Specker* was very narrowly decided."); C.R. Bowles, *Your Retainer: Pocket Aces or a 7–2 Off Suit?*, 24 Am. Bankr.Inst. J. 28, 76 (May 2005) (author noting that only issue raised by the parties in *Specker Motors* was mandatory/discretionary distinction). Since § 726(b) uses the word "shall," the Sixth Circuit Court of Appeals concluded that the pro rata distribution requirement was mandatory. *Specker Motor Sales Co.*, 393 F.3d at 662. The court noted that the attorney opposing disgorgement, Donald Bays, had raised a number of public policy arguments against disgorgement, all of which the court rejected in light of the statute's unambiguity. *Id.* at 664. The *Specker Motors* court also indicated that, contrary to Bays' assertions, the court's holding in this regard was consistent with the policy of the Bankruptcy Code.

> "Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive *pro rata* shares of the debtor's property." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Equality of distribution would be vitiated if one equally situated administrative claimant-Bays-received more than his *pro rata* share.

*Id.*

Thus, it is clear from the foregoing that § 726(b)'s distribution scheme from which the disgorgement issue arose applies only to "creditors of equal priority" or "equally situated administrative claimant[s]." An attorney with a lien on a retainer paid to him is not "equally situated" with other administrative claimants that advance services or credit to the debtor on an unsecured basis. As such, § 726(b) is inapplicable to the case at hand.

The logic of this result was succinctly explained in *Burnside Steel Foundry Co.*:

> [T]he typical retainer paid to a debtor's attorney in a Chapter 11 case is intended to secure future payment of attorney's fees awarded by the Court. In the event the Court orders such an award, and the debtor does not have the cash to pay the award, the retainer insures payment. If the case fails and is converted to Chapter 7, the retainer enables the debtor's attorney to avoid the subordination of the Chapter 11 expenses of administration to those incurred in administering the Chapter 7 estate mandated by § 726(b) of the Bankruptcy Code.
>
> The reason why this result obtains is simple. . . . There is nothing theoretically different between the attorney who receives a retainer against future fees and a landlord who takes a cash security deposit to secure the payment of future rents. The reason that the retainer succeeds in avoiding the subordination requirements of § 726(b) is that § 726 only affects distribution priorities among holders of unsecured claims, and an attorney with a retainer is, to the extent of the retainer, the holder of a secured claim.

*In re Burnside Steel Foundry Co.*, 90 B.R. at 944.

As a final note, this court observes that although, as previously mentioned, no court has addressed *Specker Motors* as it relates to state law attorneys' liens, one

court has considered whether *Specker Motors* applies in the context of carve-out professional fees. *See In re U.S. Flow Corp.*, 332 B.R. at 792. To clarify, the issue in *US Flow* was whether, in a case converted from chapter 11 to 7, court-appointed professionals in the chapter 11 case must disgorge, in order to achieve parity among all administrative claimants, carve-out funds approved by the court pursuant to a DIP financing order. Citing, *inter alia,* the narrowness of the *Specker Motors* decision, the *US Flow* court concluded that disgorgement of carve-out funds was not required since the lien position of the lenders who consented to the carve-out was valid and unassailable. *Id.* at 795–797. While admittedly not entirely on point with the present case, this court reads the *US Flow* decision as consistent with the ruling herein. Although not expressed by the *U.S. Flow* court in these words, the carve-out was, in effect, an assignment of the secured lenders' lien position to the extent of the carve-out, rendering the professionals secured creditors, with a greater priority in the carve-out funds than other administrative claimants. Because the professionals were not equally situated with the other administrative claimants, § 726(b) and *Specker Motors* had no applicability.

## III.

Based on all of the foregoing, the court will enter an order denying the chapter 7 trustee's motion for disgorgement. This is a core proceeding. See 28 U.S.C. § 157(b)(2)(A); *Matter of Lockwood Corp.*, 216 B.R. at 632.