ELECTRONIC CITATION:  2011 FED App. 0009P (6th Cir.)
File Name:  11b0009p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   TWO GALES, INC.,<br><br>                 Debtor.<br>_____<br><br>CUPPS & GARRISON, LLC,<br><br>                 Appellant,<br><br><br>                 v.<br><br>SUSAN RHIEL, CHAPTER 7 TRUSTEE,<br><br>                 Appellee.<br><br>_____ | Nos. 10-8063 / 10-8064 / 10-8079 |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division, Columbus.
No. 09-60250.

Argued:  May 4, 2011

Decided and Filed:  July 14, 2011

Before:  BOSWELL, HARRIS, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Stewart H. Cupps, CUPPS & GARRISON, LLC, Columbus, Ohio, for Appellant.
Susan L. Rhiel, RHIEL & ASSOCIATES CO., LPA, Columbus, Ohio, for Appellee.  **ON BRIEF:**
Stewart H. Cupps, CUPPS & GARRISON, LLC, Columbus, Ohio, for Appellant.  Susan L. Rhiel,
RHIEL & ASSOCIATES CO., LPA, Columbus, Ohio, for Appellee.

---

**OPINION**

---

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge. After the debtor's chapter 11 case was converted to a case under chapter 7, the bankruptcy court entered orders granting fees to counsel for Susan Rhiel, the chapter 7 Trustee (the "Trustee"), denying the fees requested by Cupps & Garrison, LLC ("C&G"), debtor's chapter 11 counsel, and requiring C&G to disgorge its pre-petition retainer so that the administrative expenses from the chapter 7 case could be paid. C&G has appealed those orders.

## I.  ISSUES ON APPEAL

The issues presented in these appeals are:  Whether the bankruptcy court misapplied 11 U.S.C. § 726 and applicable state law regarding security retainers when it denied C&G's fee application, granted the fee application of the Trustee, acting as her own counsel, and ordered C&G to disgorge its pre-petition retainer; and whether the bankruptcy court lacked jurisdiction to order disgorgement.

## II.   GENERAL JURISDICTION

The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel (the "Panel") and none of the parties elected to have this appeal heard by the district court.  28 U.S.C. § 158(b)(6), (c)(1).  A bankruptcy court's final order may be appealed as of right.  28 U.S.C. § 158(a)(1), (b)(6) and (c)(1).  For purposes of an appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).  The bankruptcy court's orders denying C&G's final fee application, granting the Trustee's fee application and directing C&G to disgorge to the Trustee the entire amount of its pre-petition retainer, which exceeded the amount of allowed fees at the time, are final orders. *See, e.g., Boddy v. U.S. Bankruptcy Court, Western District of Ky.* (*In re Boddy*), 950 F.2d 334, 336

(6th Cir. 1991); *In re Scarlet Hotels, LLC*, 392 B.R. 698, 701 (B.A.P. 6th Cir. 2008) (finding that a bankruptcy court's award of fees is a final and appealable order**)**.

The award of fees and the determination of the reasonable amount of the fees are issues committed to the sound discretion of the trial court. *Am. Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109 (6th Cir. 1985). Thus, a bankruptcy court's decision to award fees is reviewed for an abuse of discretion. *In re Boddy*, 950 F.2d at 336. A bankruptcy court abuses its discretion if it relied upon clearly erroneous findings of fact, improperly applied the law, or employed an erroneous legal standard. *Id.*

## III. FACTS

On September 3, 2009 (the "Petition Date"), Two Gales, Inc. (the "Debtor"), with the assistance of C&G, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. C&G filed an application seeking court approval of its employment as counsel for the Debtor on October 22, 2009. The application discloses that C&G received a retainer in the amount of $10,000. Although no reference to a fee agreement is made in the application, the appellee does not dispute that the Debtor and C&G entered into a fee agreement on the Petition Date. The fee agreement provided for the payment of a retainer which was to be deposited in C&G's IOLTA account and drawn down for C&G's fees and expenses incurred in representation of the Debtor as approved by the bankruptcy court. The bankruptcy court entered an order approving C&G's employment on November 24, 2009 (the "Employment Order"). The Employment Order allowed C&G to receive and apply, prior to approval of any fee application, eighty percent of its fees and one hundred percent of its expenses from the pre-petition retainer upon the filing of an itemized statement detailing the services performed and the expenses incurred in representation of the Debtor. However, the Employment Order also provided that "[a]ll payments received . . . shall be subject to repayment and final approval of the Court."

C&G filed an itemized fee statement on December 22, 2009 detailing fees in the amount of $15,158.50 and expenses of $1,138.96 (which includes a $1,039 filing fee) from the Petition Date

through November 30, 2009. As authorized by the Employment Order, C&G drew down the retainer and applied it to their outstanding fees and expenses.

C&G filed its first application for compensation on January 18, 2010 asking for approval of fees from the Petition Date through December 31, 2009 in the amount of $19,504.50 and expenses in the amount of $1,224.32, and for approval of the $10,000 provisionally applied by C&G against the retainer pursuant to the Employment Order. Before the bankruptcy court ruled on the first application, the case was converted to a case under chapter 7 of the Bankruptcy Code on February 11, 2010 and the Trustee was appointed. Following the conversion of the case to chapter 7, on March 2, 2010, the bankruptcy court denied C&G's first application without prejudice to refiling pending the outcome of the Trustee's investigation of the post-petition disposition of the Debtor's accounts receivable. The bankruptcy court further ordered that any amounts applied by C&G on a provisional basis be kept in a separate account pending the outcome of the investigation.

On July 29, 2010, C&G filed a final application for compensation asking for allowance of compensation from the Petition Date through February 11, 2010 in the amount of $21,418 and expenses in the amount of $1,374.57, and for approval of the $10,000 provisionally paid to C&G. The bankruptcy court denied the application on August 10, 2010 citing 11 U.S.C. § 726(b) and finding that chapter 7 administrative expenses and outstanding U.S. Trustee fees are entitled to priority. The bankruptcy court also noted that upon completion of the Trustee's administration of the case, the bankruptcy court may reconsider its decision or, in the event that there are insufficient funds to pay the chapter 7 administrative expenses, consider whether disgorgement is appropriate. The bankruptcy court provided no further basis for its denial of C&G's fee application. No hearing was held by the bankruptcy court with respect to the fee application. There is no indication in the record that the bankruptcy court considered 11 U.S.C. § 330 or the existence of a pre-petition retainer when it denied the fee application. C&G timely filed a notice of appeal of the bankruptcy court's order denying its final application for compensation.

On August 17, 2010, the bankruptcy court entered an order granting the application of the Trustee's counsel for compensation and expenses in the amount of $4,180.77 and finding that the services performed were reasonable and necessary. The bankruptcy court also set a hearing at which

C&G was directed to appear and show cause why all compensation and other funds received from the Debtor should not be disgorged in compliance with 11 U.S.C. §§ 329(b) and 726(b) and Federal Rule of Bankruptcy Procedure 2017. C&G timely filed a notice of appeal of the bankruptcy court's order granting the Trustee's counsel's application. The show cause hearing was held on September 28, 2010. During the show cause hearing, the Court declined to consider the relevance or existence of a security retainer. Following the show cause hearing, the bankruptcy court determined disgorgement was required and directed C&G to disgorge the entire amount of the retainer to the Trustee. The bankruptcy court signed an order on October 15, 2010 directing this disgorgement. C&G also timely filed a notice of appeal of the disgorgement order.

All three appeals have been consolidated before the Panel. On November 16, 2010, the Panel entered an order staying the bankruptcy court's disgorgement order conditioned upon C&G depositing in escrow with the Trustee the sum of $5,155.77 (which is equal to the sum of the Trustee's fees and expenses at the time plus outstanding U.S. Trustee fees).

The bankruptcy estate is administratively insolvent.

## IV. APPEAL REGARDING FEES OF C&G

### A. RIPENESS

In addition to the requirement that an appeal involve a final order, the issues raised on appeal must be ripe for determination. Although neither of the parties to this appeal questioned the Panel's jurisdiction to consider all of the issues raised in this appeal, questions of jurisdiction can be raised *sua sponte*. *See Adland v. Russ*, 307 F.3d 471, 490-91 (6th Cir. 2002). Because no fees have been awarded to C&G in this case and no determination has been made as to the character of the retainer received by C&G, the Panel, *sua sponte,* finds that certain issues raised with respect to the denial of C&G's fees and the disgorgement of the retainer by C&G in this appeal are not actually ripe for determination. *See Amer. State Bank v. Marks* (*In re MacNeil*), 907 F.2d 903, 904 (9th Cir. 1990).

The ripeness doctrine has developed "to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 399 (6th Cir. 2001) (quoting *Dixie Fuel Co. v. Comm'r of Soc. Sec.*, 171 F.3d 1052, 1057 (6th Cir. 1999)). In other words, "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.' " *Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

*Cassim v. Educ. Credit Mgmt. Corp.* (*In re Cassim*), 594 F.3d 432 (6th Cir. 2010). There are two components to the ripeness doctrine. *Id.* Determining whether an issue is ripe for judicial review requires a court "to evaluate (1) the fitness of issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S. Ct. 2026, 155 L.Ed.2d 1017 (2003) (citation omitted).

In *National Park*, the Supreme Court found the matter before it was not ripe for determination in part because "further factual development [about what type of contract was at issue] would significantly advance our ability to deal with the legal issues presented." *Id.* at 812 (internal quotation marks and citations omitted). In addition, the Supreme Court reasoned,

Petitioner's argument appears to be that mere uncertainty as to the validity of a legal rule constitutes a hardship for purposes of the ripeness analysis. We are not persuaded. If we were to follow petitioner's logic, courts would soon be overwhelmed with requests for what essentially would be advisory opinions because most business transactions could be priced more accurately if even a small portion of existing legal uncertainties were resolved. [footnote omitted] In short, petitioner has failed to demonstrate that deferring judicial review will result in real hardship.

*Id.* at 811-812.

B.     DISCUSSION

C&G argues that the bankruptcy court abused its discretion because it misapplied § 726(b) in denying C&G's final fee application, granting the Trustee's application and directing the disgorgement of the retainer despite the existence of a retaining lien under state law. C&G asks the

Panel to reverse and remand with instructions to the bankruptcy court to enter an order granting C&G's final fee application to the extent of its retainer and approving C&G's application of its retainer to its allowed fees and expenses. However, C&G has not been allowed any fees in this case nor has a determination been made as to the character of its lien under state law. For the reasons discussed below, this Panel will vacate the order of the bankruptcy court denying C&G's fees because the bankruptcy court erred in its initial application of 11 U.S.C. § 726(b) and will remand for determination of whether the provisions in the pre-petition retention letter between C&G and the Debtor representative established a valid lien under Ohio law securing the payment of fees the bankruptcy court might award to C&G for necessary and reasonable services provided while C&G served as counsel to Debtor as the debtor in possession.[1]

Bankruptcy courts have discretion to award or deny compensation to estate professionals. *See A & A Energy Props., Ltd. v. Shapack, McCullough & Frank, P.C.* (*In re A & A Energy Props., Ltd.*), No.87-2197, 1988 WL 135910, at *2 (6th Cir. 1988) (unpublished table decision). Under 11 U.S.C. § 330(a)(1), the bankruptcy court may award "(A) reasonable compensation for **actual, necessary** services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a) (emphasis added). On its own motion, the bankruptcy court may award compensation that is less than the amount of compensation requested. *See* 11 U.S.C. §§ 329(b), 330(a)(2). Even if no objection has been raised by creditors or parties in interest, the bankruptcy court has both the power and the obligation to review fee applications. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833 (3d Cir. 1994).

> The Bankruptcy Code assigns to courts a comprehensive duty to review fees in a particular case, and 11 U.S.C. § 330 is the sole mechanism by which fees may be enforced. Dismissal of a case, or a private agreement between the debtor and its attorney, cannot abrogate the bankruptcy court's statutorily imposed duty of review. *See Jensen v. Gantz* (*In re Gantz*), 209 B.R. 999, 1002 (10th Cir. BAP 1997) (attorney entitled only to fees awarded by the bankruptcy court under § 330); *In re*

---

[1] Because this case was administratively insolvent even prior to this appeal, this Panel recognizes that, absent a determination that C&G does have the benefit of a lien in the retainer, consideration of C&G's fee application might be an act of futility. The Panel thus refrains from ordering a hearing on C&G's fee application unless it is determined that C&G's claim of having been duly granted a lien in the retainer has been proven.

> *Jeanes,* No. 01-00760, 2004 WL 1718093, at \*2 (Bankr. N.D. Iowa June 17, 2004) ("Because § 330(a) requires court approval to create the obligation to pay the attorney's fees, absent court approval neither the debtor nor the estate is ever liable. Court approval under § 330(a) is what creates the liability, not the performance of the services.") (citations omitted); *In re Marin*, 256 B.R. 503, 507 (Bankr. D. Colo. 2000) ("*There is no other way for an attorney to be paid*! An attorney who extracts payments from debtors other than pursuant to proper disclosure, or to allowance under section 330, stands in violation of the provisions of the bankruptcy (sic) Code, and may properly be stripped of all fees.") (emphasis original). As an attorney appointed under 11 U.S.C. § 327, Halbert was required to seek approval of his fees from the court under 11 U.S.C. § 330.

*Dery v. Cumberland Cas. & Sur. Co.* (*In re 5900 Assocs., Inc.*), 468 F.3d 326, 329 (6th Cir. 2006).

In this case, with respect to C&G's fees, it is not apparent from the record that the bankruptcy court engaged in an analysis under 11 U.S.C. § 330. Rather, the bankruptcy court appears to have based its denial of C&G's fees solely on its reading of 11 U.S.C. § 726. Section 726(b) is not a basis for denying a claim for compensation, it is a priority scheme for dealing with distributions on allowed claims. The allowance or disallowance of compensation for Debtor's counsel is governed by other provisions of the Bankruptcy Code. In addition, the bankruptcy court relied upon 11 U.S.C. § 726(b) in ordering C&G to disgorge its retainer. The Trustee argues that, under *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir. 2004), the retainer received by C&G is subject to disgorgement in order to comply with the distribution scheme set forth in 11 U.S.C. § 726(b).

Section 726(b) provides,

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), or (10) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

11 U.S.C. § 726(b).

In *Specker*, the Sixth Circuit found that compliance with the scheme set forth in 11 U.S.C. § 726(b) is mandatory and ordered the chapter 11 debtor's counsel ("Bays") to disgorge the interim compensation he had received (by having drawn down his retainer - which may not have been received until after the petition was filed) so that in the post-conversion chapter 7, all similarly situated administrative claimants would receive a pro rata distribution. *See Specker Motor Sales Co.*, 393 F.3d at 659. Bays had been awarded fees and authorized to keep his retainer as interim compensation. However, upon "final liquidation" the estate was determined to be administratively insolvent. Therefore, the bankruptcy court ordered Bays to disgorge almost all of his retainer so that a pro rata distribution could be made among the administrative claims. Bays argued that "the retainer already paid to him should not be subject to this mandatory pro rata distribution because the money had already been paid out of the estate." The Sixth Circuit defined the issue before it: "We must therefore consider whether the retainer remains within the scope of mandatory pro rata distribution." *Id.* at 662.

The Sixth Circuit concluded that the interim compensation Bays had been authorized to keep, e.g., the retainer, was always subject to disgorgement. "Interim Compensation is subject to re-examination and adjustment. This includes retainers, which are held in trust for the estate, and remain the property of the estate. . . . Bays's claim, like other approved administrative claims on the estate, at all times remained subject to the statutory *pro rata* distribution scheme." *Id*. at 663 (internal citations omitted).

However, the Sixth Circuit's decision in *Specker* is limited because it did not address the effect of an attorney's lien on a retainer under state law. *See In re Appalachian Star Ventures, Inc.*, 341 B.R. 222 (Bankr. E.D. Tenn. 2006)*.* In *Appalachian Star*, the bankruptcy court concluded that an attorney with a lien is not similarly situated to other administrative claimants, therefore the priority scheme set forth in 11 U.S.C § 726(b) is not applicable. The attorney in *Appalachian Star* had received a $15,000 retainer, which was approved by the bankruptcy court in early 1994. In mid 1994, debtor's counsel was awarded interim compensation and authorized to draw down its retainer. In the fall of 1994, debtor's case was converted to chapter 7. Shortly after the conversion, debtor's counsel's final fee application was approved. Over eleven years later, the chapter 7 trustee filed a

motion for disgorgement of the interim compensation paid to debtor's chapter 11 counsel. In a well reasoned decision, the bankruptcy judge denied the motion.

> The issue of whether disgorgement is required if the attorney has a lien under state law was not raised or addressed in *Specker Motors*. *See In re U.S. Flow Corp.*, 332 B.R. 792, 795 (Bankr. W.D. Mich.2005) (recognizing that "[n]one of the three [*Specker Motors*] courts, each which rendered written opinions, addressed issues relating to state law attorneys' liens"). Nor, to this court's knowledge, has a court within the Sixth Circuit addressed the issue in light of the *Specker Motors* decision. However, courts from other circuits have found the argument meritorious and have uniformly concluded that a state law lien trumps, or more accurately, prevents § 726(b) from coming into play. *See In re Printcrafters, Inc.*, 233 B.R. 113, 120 (D. Col. 1999) (because under Colorado law a law firm had lien on pre-petition retainer paid to it, the firm was not required to share the retainer with other administrative claimants); *In re Pannebaker Custom Cabinet Corp.*, 198 B.R. 453, 460 (Bankr. M.D. Pa.1996) (unless excessive or unreasonable, retainer not subject to disgorgement to achieve parity among administrative claimants due to attorney's superior priority as secured creditor); *In re Printing Dimensions, Inc.*, 153 B.R. 715, 719 (Bankr. D. Md.1993) (counsel not required to share pre-petition retainer pro rata with other administrative claimants where retainer is treated as security or held in trust); *In re North Bay Tractor, Inc.*, 191 B.R. 186, 187-88 (Bankr. N.D. Cal. 1996) (attorney's interest in retainer "is in the nature of a security interest, assuring the attorney of a minimum fee in the case" and to require attorney to disgorge the retainer so that other claimants of equal priority receive equal dividends would "undermine the purpose of retainers"); *Matter of K & R Mining, Inc.*, 105 B.R. 394, 397 (Bankr. N.D. Ohio 1989) (rejecting under Ohio law the assertion that debtor's attorney was required to turn over his retainer to be shared pro rata by all administrative claimants); *In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (Bankr. N.D. Ill.1988) (noting that retainer paid to chapter 11 debtor's attorney enables the attorney "to avoid the subordination of the Chapter 11 expenses of administration to those incurred in administering the Chapter 7 estate mandated by § 726(b)"); *In re Kinderhaus Corp.*, 58 B.R. 94, 97 (Bankr. D. Minn.1986) ("A pre-petition retainer held in trust by a debtor's attorney ... is not ordinarily available as a source of payment for other administrative expense claims under 11 U.S.C. § 503(b) ...."); *cf. In re Cottrell Intern.*, LLC, 2000 WL 1180282, *4 (Bankr. D. Col. July 19, 2000) (permitting postpetition retainer to debtor's attorney to stand as security for payment of fees allowed by the court, but noting that under 11 U.S.C. § 328 an order allowing employment on terms such as the payment of a retainer remains reviewable by the court and may be modified (with the result of possible disgorgement) if, within the language of the statute, "the terms and conditions prove to have been improvident ...").

*Id.* at 226-27. Since the issue was not specifically addressed in *Specker*, the bankruptcy judge found that as a result of the lien, the mandatory scheme did not apply because an attorney with a lien in a

retainer paid to him is not equally situated with other administrative claimants. The holder of a valid "security retainer" under state law may not be subject to the distribution scheme in 11 U.S.C. § 726(b). In this case, however, the character of C&G's retainer under state law has not been determined and no fees have been awarded to C&G.

## C. CONCLUSION

The reliance of the bankruptcy court on § 726(b) as precluding the need for consideration of whether C&G has a valid lien in the retainer is legally erroneous. That legal error left unanswered the questions of whether the steps necessary under Ohio law to perfect a lien in the retainer had been satisfied in this case and what fees should be allowed to C&G. These factual determinations must be made before the issues of whether the bankruptcy court misapplied 11 U.S.C. § 726 and applicable state law regarding security retainers when it denied C&G's fee application and erred when it ordered disgorgement of C&G's retainer are ripe for appeal.

## V. APPEAL REGARDING TRUSTEE'S FEES

## A. STANDARD OF REVIEW

With respect to the remaining issue on appeal, the award of fees to Trustee's counsel, the Panel has jurisdiction to hear the appeal. The award of fees and the reasonable amount of the fees are issues committed to the sound discretion of the trial court. *Am. Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109 (6th Cir. 1985). Thus, a bankruptcy court's decision to award fees is reviewed for an abuse of discretion. *In re Boddy*, 950 F.2d at 336. A bankruptcy court abuses its discretion if it relied upon clearly erroneous findings of fact, improperly applied the law or employed an erroneous legal standard. *Id.*

A bankruptcy court's finding of fact should not be disturbed simply because another trier of fact might construe the facts differently or reach a different conclusion. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S. Ct. 1504 (1985). It is not sufficient that the Panel might have reached a different result if it had been the trier of fact; a finding of fact should be upheld unless

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *United States v. Mathews* (*In re Mathews*), 209 B.R. 218 (B.A.P. 6th Cir. 1997); *First Bank of Ohio v. Brunswick Apartments of Trumbull County, Ltd.* (*In re Brunswick Apartments of Trumbull County, Ltd.*), 215 B.R. 520 (B.A.P. 6th Cir. 1998). In contrast, no deference is given to a bankruptcy court's conclusions of law. *Menninger v. Schramm* (*In re Schramm*), 431 B.R. 397, 399 (B.A.P. 6th Cir. 2010) (citation omitted). "De novo means the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

### B.  DISCUSSION

With respect to the fees of Trustee's counsel, the bankruptcy court found that the fees were reasonable and necessary. Moreover, C&G has no quarrel with the bankruptcy court's finding. In light of this specific finding and the deference to be given to the bankruptcy court's factual findings, the Panel finds that the bankruptcy court did not abuse its discretion in allowing the fees of Trustee's counsel. As noted above, the issue of priority of payment from limited estate funds is not ripe to be addressed by this Panel.

### VI.  CONCLUSION

For the foregoing reasons, the Panel AFFIRMS the bankruptcy court's August 17, 2010 order granting the fee application of the Trustee's counsel; VACATES the August 10, 2010 order denying C&G's fee application and the October 15, 2010 order directing disgorgement, and REMANDS the case for factual determinations regarding the allowance of fees and the character of the retainer received by C&G.

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge, concurring in the judgment in part and dissenting in part.

While I cannot join in the majority's opinion, particularly its discussion of ripeness, I generally concur in the result, which is essentially to vacate the bankruptcy court's orders to the extent that they hold that it makes no difference whether the debtor's chapter 11 counsel has a valid security interest under state law, and remand the case for further proceedings. Like the Ninth Circuit BAP that addressed a similar dispute in *Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730 (9th Cir. BAP 2005), I would hold that it is proper for us to address the issue of whether the bankruptcy court erred in applying section 726(b) to deny a fee application without regard to whether counsel has a valid security interest under state law. *Id.* at 734-36. Like the Ninth Circuit BAP, I would also hold that whether counsel has a valid security interest does indeed matter. *Id.* at 736-39; *In re Appalachian Star Ventures, Inc.*, 341 B.R. 222 (Bankr. E.D. Tenn. 2006). And like the Ninth Circuit BAP, I would also hold that whether counsel has a valid security interest should be left in the first instance for the bankruptcy court. *In re Dick Cepek, Inc.,* 339 B.R. at 740.